(78 Misc. Rep. 679.)

### PEOPLE v. O'BRIEN et al.

(Supreme Court, Special Term, Albany County. December, 1912.)

1. STATUTES (§ 279*)—PLEADING—NECESSITY.

In determining the sufficiency of a complaint to recover moneys wrongfully received by defendants on claims for furnishing coal to several state prisons, the Prison Law (Consol. Laws 1909, c. 43) may be considered by the court.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 378; Dec. Dig. § 279.*]

2. PLEADING (§ 345*)—MOTIONS—JUDGMENT ON PLEADINGS.

Where a complaint to recover moneys received by defendants on claims for furnishing coal to state prisons under contracts specifically set forth, on the ground that the coal was not of the quality contracted for, does not allege that defendants conspired with the clerk of the prisons or that he was guilty of any fraudulent act or had failed in any respect to perform his duty, and the answer denies every material allegation of the complaint, defendants are entitled, on motion under Code Civ. Proc. § 547, to judgment on the pleadings with leave to plaintiff to amend the complaint.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 1055–1059; Dec. Dig. § 345.*]

Action by the People against John F. O'Brien and another. Motion by defendants for judgment on the pleadings under Code Civ. Proc. § 547. Granted, with leave to amend.

Royal Corbin, of Plattsburg (Edgar T. Brackett, of Saratoga Springs, of counsel), for the motion.

Thomas Carmody, Atty. Gen., and James A. Parsons, Deputy Atty. Gen., opposed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

CHESTER, J. This motion for judgment on the pleadings raises the question of sufficiency of the complaint as stating a cause of action, to recover moneys alleged to have been wrongfully received.

Three causes are alleged. In the first, after the formal allegations, it is alleged, in substance, that between October 1, 1903, and May 1, 1910, the defendants furnished to Clinton prison coal to the amount of 32,943 tons and presented verified claims therefor as pea coal to the agent and warden thereof, and received during that period payments on said claims for pea coal; that said claims so presented were to the knowledge of the defendants false and fraudulent in that of the coal so furnished, and for which said verified claims were presented and upon which payments were made, about 16,133 tons were coal of an inferior quality and grade and of a value of $1 per ton less than pea coal. In the second cause it is alleged, in substance, that between April, 1907, and June, 1908, the defendants, pursuant to advertisements for proposals for furnishing egg anthracite coal for use in Sing Sing prison, made proposals for furnishing the same at $4.75 per gross ton, and that said proposals were accepted by the prison department as being the lowest bid; that the defendants, with intent to cheat and defraud the people of the state, wrongfully, fraudulently, and unlawfully and contrary to the terms of their bids and proposals caused and induced the agents and wardens of said Sing Sing prison to enter into written contracts with the defendants for the delivery of grate coal, the same being coal of an inferior and cheaper grade, and worth 35 cents per ton less than egg coal, with intent to defraud the people; that in pursuance thereto the defendants delivered to Sing Sing prison grate coal to the amount of about 11,085 tons; and that the defendants wrongfully, unlawfully, and knowingly presented claims to the warden of such prison for the coal thus furnished and wrongfully received 35 cents a ton in excess of the value of the coal furnished. In the third cause it is alleged, in substance, that about the 1st day of May, 1909, the agent and warden of Sing Sing prison entered into a contract in writing with the defendants whereby they agreed to deliver 5,000 tons of egg anthracite coal for the use of such prison at the agreed price of $4.95 per gross ton; that the defendants between the 1st of May, 1909, and the 1st of May, 1910, delivered to such prison 6,050 tons of grate coal being coal of an inferior quality and of a value at that time of 55 cents per ton less than egg coal and presented claims for egg coal which were false, fraudulent, and unlawful in that the coal furnished was not egg coal, but was grate coal of an inferior quality and of a value of 55 cents per ton less than egg coal; and that the defendants have received and retained payment on such claims. The answer denies every material allegation of the complaint.

[1] In determining the sufficiency of the complaint, the court has the right to consider the Prison Law (Laws of 1909, c. 47; Consol. Laws, c. 43), which is a public act, the same as if such law had been fully set forth or embodied in the complaint. Walsh v. Trustees of New York & B. Bridge, 96 N. Y. 427–438. Section 132 of that law authorizes the agent and warden of each prison to purchase supplies for

the prison under his charge, and section 131 gives him complete authority over all the fiscal transactions and dealings on account of each prison and gives him control over all matters of finance relating thereto subject to the supervision of the superintendent of state prisons. By section 133 he is required to take bills for all goods purchased by him at the time of the purchase. Section 136 prescribes the duties of the clerk of each prison who is a constitutional officer appointed by the comptroller pursuant to section 4 of article 5 of the Constitution. It is by section 136 made the duty of the clerk, among other things "to keep books of account of the financial transactions of the prison * * * to enter each bill taken by the agent and warden of the prison in the books of the prison at the time of the receipt of the articles mentioned in such account, and in case the articles received do not agree in all respects with the invoice, he shall immediately notify the agent and warden of such discrepancy and note in his book the discrepancy, whether in weight, quantity, or quality." Section 127 provides, with respect to the monthly statement required to be made by the agent and warden to the comptroller, that:

"The affidavit of the clerk shall likewise be appended thereto certifying that the articles contained in such bill were received at the prison and that they conform in all respects to the invoice of goods received and entered by him both in quality and in quantity."

The statute does not appear to require any affidavit or verification of any kind of the bills originally rendered when the goods are furnished, but section 133 requires, when payment for goods is made, that the person to whom the bill shall be paid shall in all cases make and subscribe an affidavit stating that the articles specified were actually furnished as charged, that the bill represents the correct amount due him, that the articles included in the account were sold at fair cash market prices, and that he has actually received the full amount in cash from the agent and warden.

[2] There is no allegation in the complaint that the clerk of the prisons has failed in any respect to perform the duties imposed upon him by the law, and the presumption is that he has performed his duty unless the contrary is shown. Ramsay v. Hayes, 187 N. Y. 367, 370, 80 N. E. 193. This being the situation, it appears that the defendants delivered the coal mentioned in the complaint to the agents and wardens of the prisons; that the clerk of the prison, the constitutional officer charged with that duty, examined the coal when it was received as to its quality and quantity and entered each bill in the books of the prison at the time of its receipt; that no discrepancy was found with respect to its quality or quantity; and that it was accepted as a full compliance with the terms of the contract and with the articles mentioned in the invoice, and following all that the defendants received their pay therefor in due course.

The state in its contracts with individuals must be judged by the same rules of law which govern similar cases between individuals. People v. Stephens, 71 N. Y. 527.

The state having ordered the coal in question, having received it in due course, having accepted it and after full examination of it as to

its quàlity and quantity or after full opportunity to do so and having paid for it, the well-settled rule of law must govern that such acceptance and payment, under an executory contract such as this one was, precludes the vendee from subsequently obtaining damages for alleged defects therein, unless such damages are based upon a warranty. Coplay Iron Co. v. Pope, 108 N. Y. 232, 15 N. E. 335; Studer v. Bleistein, 115 N. Y. 316, 324, 22 N. E. 243, 5 L. R. A. 702.

The further principle should be held to apply that, where a purchaser receives goods knowing the quality thereof and never offers to return the same and never gives the seller notice or oppurtunity to take it back, the purchaser must be conclusively presumed to have acquiesced in the quality. Mason v. Smith, 130 N. Y. 474, 480, 29 N. E. 749; Waeber v. Talbot, 167 N. Y. 48, 57, 60 N. E. 288, 82 Am. St. Rep. 712.

There is no allegation of warranty in the complaint; but, even if there were, that would not extend to known defects. In view of the fact that the complaint contains no allegation that the defendants conspired with the clerk of the prisons or that he was guilty of any fraudulent act in respect to the matter, and with the presumption that he fully performed his duty, it must be held, in view of the principles of law above mentioned, that the complaint is insufficient, and the defendants are therefore entitled to have their motion granted, with costs. Leave, however, should be granted to the plaintiffs to amend the complaint upon the payment of such costs if they should be so advised.

Ordered accordingly.