FRED G. SAFEE, in Behalf of Himself and All Others Similarly Situated, Appellant, *v.* CITY OF BUFFALO and Others, Respondents.

Fourth Department, March 7, 1923.

**Municipal corporations — ordinance of city of Buffalo regulating sale of soft drinks and enacted pursuant to general authority may be opposed as unreasonable — ordinance is constitutional and valid exercise of police power.**

An ordinance of the city of Buffalo, enacted under the authority granted to the city in section 13 of its charter and in section 20 of the General City Law, and purporting to regulate the sale of certain soft drinks, was enacted in pursuance of general authority and, therefore, may be opposed as unreasonable and evidence may be introduced on the question.

Such an ordinance, which requires that one conducting a place for the sale of soft drinks shall secure a license from the mayor, prohibits business during certain hours, provides for inspection and the taking of samples of beverages kept for sale, and contains procedural provisions for revocation of licenses and provides a fine or penalty for violations, is constitutional and a valid exercise of the police power.

That there was a real evil reasonably to be anticipated and to be guarded against in the sale of soft drinks is clear, for it is common knowledge supported by the evidence in this case, that since the enactment of the prohibition laws there has been and is a widespread disregard thereof and that there has been a large increase in the number of places dealing in soft drinks, including many former saloons, and many of these places are mere covers for illegal traffic and have become centers for crime and meeting places for criminals, and as an incident to these things, poisonous and otherwise harmful concoctions are being there made and illegally disposed of.

The remedy proposed by the ordinance bears a resonable relation to the evil sought to be guarded against and the ordinance is not rendered invalid by the provisions dealing with prohibited hours, with inspection and with the taking of samples, and such provisions relating to inspection and the taking of samples are not violative of the search and seizure clause of the Bill of Rights.

APPEAL by the plaintiff, Fred G. Safee, from so much of an order of the Supreme Court, made at the Erie Special Term and entered in the office of the clerk of the county of Erie on the 20th day of July, 1922, as denies in part his motion for a temporary injunction order restraining the enforcement of an ordinance of the city of Buffalo, known as chapter 23 of the Buffalo City Ordinances, passed March 1, 1922 (since amended July 26, 1922).

*Leary & Evans* [*W. J. Evans* of counsel], for the appellant.

*William S. Rann* [*John E. Livermore* of counsel], for the respondents.

CROUCH, J.:

The council of the city of Buffalo on March 1, 1922, adopted an ordinance known as chapter 23 of the ordinances of said city, regulating the sale of non-intoxicating liquors and beverages. The text, consisting of nineteen sections, is too long for insertion here. Section 13, amended on July 26, 1922, after this action was begun, is considered as if the amended section were the original. The ordinance defines a refreshment business as one conducted for the sale at retail for consumption on the premises " of any malt or vinous beverage, cider, or any soft drink (excepting tea, coffee, milk, chocolate or cocoa), any carbonated beverage, or any other beverage or liquor produced by the process by which beer, ale, porter or wine is produced, none of said beverages or drinks containing a greater portion of alcohol than is permitted by law." It requires a license, which is to be issued by the mayor after written application therefor and after investigation of the facts therein stated; it further deals with the transfer and posting of licenses; prohibits business during certain hours; requires an unobstructed view of the interior; prohibits disorderly conduct of various kinds on the premises; provides various sanitary regulations; provides also for inspection and the taking of samples of beverages kept for sale, both by the health and police departments; contains procedural provisions for revocation of licenses and provides a fine or penalty for violations.

Plaintiff, a retail dealer, seeking herein a judgment for a permanent injunction, made application for an injunction order against the enforcement of the ordinance during the pendency of the action. The application was denied except as to a provision for

closing between twelve o'clock midnight on Saturdays and one P. M. on Sundays; and a provision dealing with drinking and lounging at the bars. Defendants are content with that disposition. Plaintiff appeals from so much of the order as denies restraint. The ordinance is attacked as unconstitutional under both the Federal and State Constitutions. (See U. S. Const. 14th Amendt. § 1; State Const. art. 1, §§ 1, 6.)

That the life, liberty and property of the individual should be secure from the tyranny of government is a fundamental principle of democracy. To that end exist the constitutional guaranties here invoked. But that principle has its counterpart in the police power, " a dynamic agency, vague and undefined in its scope " (per POUND, J., in *People ex rel. Durham Realty Corp.* v. *LaFetra,* 230 N. Y. 442), by which the public is secured against the encroachment and selfishness of the individual. So far and only so far as the public needs security from the individual may appeal be made to that agency. (*People ex rel. Nechamcus* v. *Warden, etc.,* 144 N. Y. 529.) Hence, when the question arises, there are two tests to be applied: 1. Is there a real evil, reasonably to be anticipated and to be guarded against? 2. Is there a reasonable relation between the evil and the proposed remedy? (*Matter of Stubbe* v. *Adamson,* 220 N. Y. 459, 469; *Lawton* v. *Steele,* 152 U. S. 133, 137.) And the answers are to be given by the court. (*Lochner* v. *New York,* 198 U. S. 45, 57.) But such answers must of necessity be founded frequently upon a consideration of debatable facts. That is so even in those cases where evidence may not be received. But this is not such a case. Where an ordinance is enacted in pursuance of general authority, it may be opposed as unreasonable and evidence may be introduced on the question. Where it is enacted under specific authority of the Legislature, the contrary is true. (*Matter of Stubbe* v. *Adamson,* 220 N. Y. 459, 463; 7 McQuillin Mun. Corp. § 729.) The authority to enact this ordinance is found in section 13 of the Charter of the City of Buffalo (Laws of 1914, chap. 217) and in section 20 of the General City Law (as added by Laws of 1913, chap. 247). It seems to fall into the category of general rather than of specific municipal powers. It is true that section 19 of the General City Law (as added by Laws of 1913, chap. 247) is labeled as a *general* grant of powers and section 20 as a grant of *specific* powers. But such designation is not conclusive.

Before legislative authority to enact an ordinance can be said to be specific the grant must define " its details and mode of enforcement." (*People ex rel. Knoblauch* v. *Warden, etc.,* 216 N. Y. 154, 162.) The power is general when " the manner of exercising it is not specified." (*Village of Carthage* v. *Frederick,* 122 N. Y. 268.) Or

when the ordinance has not been expressly ratified by the Legislature. (*Matter of Stubbe* v. *Adamson, supra; Anderson* v. *Steinway & Sons,* 178 App. Div. 507, 517.)   In applying to the instant case the two tests mentioned above, the court may consider as a factual background, *first,* the presumption that the council investigated the subject and acted with reason and not from caprice.   (*Matter of Stubbe* v. *Adamson, supra,* 469; *Mayor, etc.,* v. *Dry Dock, E. B. & B. R. R. Co.,* 133 N. Y. 104, 111); *second,* facts and conditions judicial notice of which may be taken; and that includes, among other things, matters of common knowledge.   *People* v. *Charles Schweinler Press,* 214 N. Y. 395; *Matter of Stubbe* v. *Adamson, supra*); *third,* facts set forth in various affidavits read and filed below appearing in the record here.

If, upon that background, it appears that there is no evil, or no reasonable relation between the evil and the remedy, the court may say the ordinance is void.   Conversely, if it appears that there is reasonable ground to believe the evil exists, even though there be " earnest conflict of serious opinion " about it; and if the remedy is fairly adapted to cure the evil without oppression, discrimination or confiscation, then it is the duty of the court to hold it good.

Is there an evil to be guarded against?   We start not only with a presumption to that effect, but we have the assurance on the face of the ordinance itself that its adoption " is immediately necessary for the preservation of the public peace, health and safety."   It is matter of common knowledge that a condition of unrest, with a tendency on the part of many elements of the population toward lawlessness, has prevailed since the World War. That same common knowledge as well as the evidence in the case tell us that since the enactment of the prohibition laws there has been and is widespread disregard thereof; that during this period there has been a large increase in the number of places dealing in soft drinks, including many former saloons; that many of these places are mere covers for illegal liquor traffic, and have become centers for crime and meeting places for criminals; and that as an incident of those things, poisonous and otherwise harmful concoctions have been and are being there made and illegally disposed of.   In short, it may fairly be found that an extraordinary situation exists extensive enough to warrant regulation for the safety and the health of the public.

It is contended upon the authority of *People ex rel. Tyroler* v. *Warden of Prison* (157 N. Y. 116) that an honest business may not be regulated because some men engaged in it have been dishonest. But that case did not so hold.   Much depends upon circumstances.

" The State may regulate a business, however honest in itself, if it is or may become an instrument of widespread oppression." (*People ex rel. Durham Realty Corp.* v. *LaFetra,* 230 N. Y. 429, 451.) So, also, where an honest business may become a medium of fraud. (*People* v. *Beakes Dairy Co.,* 222 N. Y. 416, 427.) The same is true if an honest business becomes an instrument of or cover for widespread disorder, crime or other danger to public safety, morals or health.

Is there a reasonable relation between the evil and the proposed remedy? Many of the provisions of the ordinance are claimed to be unreasonable, arbitrary and oppressive. As a mere matter of opinion one might dissent from the wisdom and policy of some details of the ordinance, but the court cannot say that they are unreasonable, arbitrary or oppressive.

It may be true that in some instances the enforcement of this ordinance will entail a hardship. That, however, does not mean oppression or confiscation, and is no objection. (*Cockcroft* v. *Mitchell,* 187 App. Div. 189.) Emphasis is laid upon the provisions dealing with prohibited hours, with inspection and with the taking of samples. The prohibited hours as the ordinance now stands in force are between twelve o'clock midnight and six o'clock A. M. There was a similar provision under the former Liquor Tax Law, directed at substantially a similar evil. There was never any doubt of its validity. There is none here.

The regulations for inspection and samples are found in amended section 13 of the ordinance. They provide in substance, *first,* that the health commissioner or the chief of police may inspect or cause to be inspected all premises where the defined refreshment business is carried on, whenever such premises are open for business, to see whether all laws and ordinances relating to public health and safety are being complied with; *second,* that the health commissioner, chief of police or deputy chief of police may require samples of any beverages on sale to be furnished for examination or analysis; *third,* that the health commissioner or the chief of police or the deputy chief of police upon probable cause being shown may authorize subordinates in writing to demand and take such samples, such written authority to be valid only when indorsed with the mayor's approval. The retail price of the samples is to be paid for, if demanded.

It is urged that these provisions are in conflict with the search and seizure clause of the Bill of Rights. (See Civil Rights Law, § 8.) But that clause is designed primarily to protect the individual in the sanctity of his home and the privacy of his books, papers and property, and has no application to reasonable rules and regulations

adopted to protect public health, morals and welfare. (24 R. C. L. 704.) Similar provisions, dealing with food products, game, intoxicating liquor, pawnbrokers and other lines of business have been sustained. The analogy is strong. Having in mind the end to be accomplished, it may not be said that these means are unreasonable.

The order appealed from should be affirmed, with costs to the appellant.

All concur.

Order affirmed, with ten dollars costs and disbursements.