# CHARLESTON.

H. L. AUSTIN *v.* W. H. THOMAS, MAYOR; HENRY A. LILLY,
C. I. CHENEY, J. B. KIRK AND GEORGE W. TROUTMAN,
DIRECTORS, OF THE CITY OF BLUEFIELD.

Submitted May 21, 1924.   Decided June 6, 1924.
Written Opinion filed June 16, 1924.

MUNICIPAL CORPORATIONS—*Ordinance Forbidding Grant of Building Permits Without Consent of Three-Fourths of Property Owners Within District Held Void as Discriminatory.*

A city ordinance providing that no permit shall be granted for the erection of a business house, or a building intended or designed as a place for the sale of goods, wares and merchandise, if there are more residence than business houses within a radius of three hundred feet of the proposed location of such structure, without the consent of three-fourths of the resident property owners owning property within the prescribed area, is unconstitutional and void as an unreasonable and discriminatory exercise of the police power.

Original mandamus by H. L. Austin against W. H. Thomas, Mayor, and others, Directors of the City of Bluefield.

*Writ awarded.*

*James S. Kahle,* for relator.
*Russell S. Ritz,* for respondents.

LITZ, JUDGE:

H. L. Austin, by petition seeks a writ of mandamus commanding the respondents, W. H. Thomas, Mayor, and Henry A. Lilly, C. L. Cheney, J. B. Kirk and George W. Troutman, Directors, of the city of Bluefield, to grant the petitioner a permit to erect a business structure upon a certain lot owned by him in said city.

The petition and special replication of petitioner to the answer of respondents show that under the title of, "An ordinance providing regulations for the location, erection and construction of business buildings in the residence portion of

the city of Bluefield, West Virginia, and providing a penalty'', the said city on January 24th, 1922, adopted the following ordinance:

"Section 1. That it shall hereafter be unlawful for any person, firm or corporation or association of persons to locate, erect, or construct any business house or building intended or designed to be used for the barter and sale of goods, wares and merchandise of any description or character, or for the conduct therein of any business within any residence portion of the city except as hereinafter provided.

"Section 2. By 'A Residence Portion of the City of Bluefield, West Virginia', as used in this ordinance, is intended and meant any part of said City where there are more dwelling houses than business houses within a radius of 300 feet of the place where any business houses or buildings intended or designed as a place for the barter and sale of goods, wares and merchandise of any description or for the conduct of any business is sought to be erected, located or constructed.

"Section 3. Any person, firm, corporation or association of persons desiring to locate, erect or construct any business house or any building intended or designed as a place for the barter and sale of goods, wares and merchandise of any description, or for the conduct of any business outside of the fire limits as now or may be hereafter designated and prescribed by ordinance of the City of Bluefield, West Virginia, shall make an application in writing to the Board of Directors for a permit so to do and accompany such petition or application with a written statement setting forth the exact place where the proposed building is to be located, erected or constructed with a map or other evidence showing that there are no more residences than there are business houses within a radius of 300 feet from the center of such location. If upon examination of said application the Board of Directors are satisfied that there are more business houses than residences within a radius of 300 feet as herein prescribed that the applicant is entitled to such permit, then such permit shall be issued.

"Section 4. If it shall appear that there are more residences than business houses within a radius of 300 feet of the proposed location of such building and the applicant for such permit shall accompany such application with the consent of three-fourths of the resident property owners owning property within said radius of

96 W. Va.

300 feet, then in that event, the Board of Directors shall cause such permit to be issued, provided, however, that the building for which such permit is granted must be of a design approved by the City Building Inspector.

"Section 5.   If an application is made for the construction of a business house in a residence portion of the City of Bluefield, West Virginia, as 'a Residence Portion of the City of Bluefield, West Virginia', is defined in Section 2 hereof, and 'it shall appear that there are in such district two or more adjoining business houses which were erected prior to and used as a business house at the passage of this ordinance, and that the building for which the permit is desired is to be constructed as an addition to, or in extension of an existing business house, but not to extend beyond the original lot upon which said business house or houses stand, then such permit shall be granted and in such case it shall not be necessary to accompany the application with the consents of property owners as prescribed in Section 4 hereof.

"Section 6.   That all buildings erected under any permit granted under the terms of this ordinance shall be constructed in compliance with all ordinance and building regulations of the City of Bluefield, West Virginia.

"Section 7.   That any person, firm, corporation or association of persons, or agents or servants or employes of such who shall hereafter locate, erect or construct any business house within a residence portion of the City of Bluefield, West Virginia, as defined herein, or who shall proceed with the construction of said building without first applying for and being granted a permit in compliance with the terms of this ordinance, shall be deemed guilty of a misdemeanor and upon conviction shall be fined not less than $50.00, nor more than $200.00, and each and every act done and performed toward the erection, construction and location of such business house without such permit shall constitute a separate offense and each and every day that any such person is engaged in constructing such building without such permit, and each and every day such building is permitted to remain in such residence portion of the City, shall constitute a separate and distinct offense.

"Section 8.   That all 'ordinances and parts of ordinances in direct conflict herewith are hereby expressly repealed."

That petitioner is the owner of a lot of land situated within the corporate limits of the city designated and described as follows, to-wit:

"BEGINNING at a stake at the intersection of the east line of Farmer Street with the north line of Adams Street (now College Avenue); thence along the North line of Adams Street (now College Avenue), North 60 30 E. 52.1 feet to a stake; thence North 29 30 W. 150 feet to the south line of a 10 feet wide alley; thence along a line of same South 60 30 W. 52.1 feet to the east line of Farmer street; thence with the east line of said Farmer Street South 29 30 E. 150 feet to the point of BEGINNING."

That on April 22d, 1922, he made formal application to respondents, constituting the board of directors of the city of Bluefield, for a permit to erect upon that portion of said lot fronting on the ten foot alley a one-story brick building measuring 26 feet by 45 feet, to be used in the conduct of a mercantile business; that on the 1st day of May, 1924, at its regular meeting the said board of directors refused the permit on the ground that the place where the building was proposed to be erected lies within a residence section of the city, as defined by the foregoing ordinance, and that the application for the permit had not been approved by three-fourths of the residents owning property within a radius of 300 feet therefrom, in accordance with the ordinance.

That petitioner actually obtained and filed with his application the written consent of sixty per cent. of the property owners, and was assured of the consent of a sufficient additional number to increase the percentage beyond the required proportion, when a former business competitor owning a lot near the property of petitioner, through ill will for him, circulated a petition among the neighboring property owners opposing the granting of the permit.

That the entrance to the proposed building is on a side street and by an alley way, not facing any other property, and at the rear of other properties which face on College Avenue and Augusta Street; that it will be in harmony and in keeping with other buildings in that community and of better construction than a number within the prescribed area;

that there are other lots near petitioner's property on which the owners propose to erect business houses; and that a large part of the property in adjoining blocks is being held for business purposes.

The answer of respondents avers that petitioner's property is situated in a purely residential vicinity, built up with substantial and costly residences, and that the conduct of a mercantile business in the building proposed to be constructed by the petitioner will constitute a nuisance to the community. The latter averment is denied in petitioner's special replication to the answer.

The respondents defend their action in refusing petitioner a permit solely on the ground that he has failed to obtain the consent of three-fourths of the neighboring property owners, as required by the ordinance, which, they assert, is a valid and constitutional exercise of the police power reposed in the city.

The petitioner, on the other hand, insists that the ordinance is invalid, at least in so far as it requires the consent of three-fourths of the property owners to obtain the permit: First, because the inhibition against the use of property for legitimate business purposes is not justified as a police regulation; and, second, for the reason that the ordinance will necessarily operate unequally among property owners within the prescribed area.

As that part of the ordinance requiring the consent of three-fourths of the neighboring property owners will necessarily render its application unfair and inequitable, we need not consider the city's power to control the erection of business structures within residential sections by uniform regulations.

In approaching the subject it may be well to note the distinction between the police power and the right of eminent domain. In the exercise of the latter private property may be taken or damaged to serve a public use, but not without just compensation; while the police power is usually exerted merely to regulate the use and enjoyment of property by the owner or, if he is deprived of his property outright, it is not taken for public use, but rather destroyed in order

to promote the general welfare of the, public, and in neither case is the owner entitled to any compensation for any injury he may sustain in consequence thereof, for . the law considers that either the injury is *damnum abseque injuria* or the owner *is sufficiently compensated by sharing in the general benefits resulting from the exercise of the police power.* The absence of compensation, of course, makes the police power much more harsh in operation than the power of eminent domain, and hence subject to stricter limitations.

A legal exercise of the police power should operate uniformly upon all persons similarly situated who may be affected thereby. Testing the ordinance by these principles, has it a valid basis? It does not place an absolute restriction on the use of property within residential districts for business structures, but undertakes merely to confer upon three-fourths of the property owners authority to say who shall be granted the privilege. The ordinance would clothe these individuals with the powers of government to refuse the right to one and bestow it upon another; thus denying to the former a legitimate use of his property, not in return for any general benefits resulting to the neighborhood from a strict maintenance of its residential character (this will not be accomplished), but in order simply that the latter may be favored.

Notwithstanding the inequitable situation which would result from an enforcement of the ordinance, counsel for respondents presents two lines of decisions representing the views of some of the courts which, he argues, by analogy support its validity. One line involves ordinances restricting, without qualification residential districts to residence .purposes. *Lincoln Trust Co.* v. *Williams Building Corporation,* 229 N. Y. 313, a leading case of this class, involved a zoning ordinance or resolution affecting the entire city of New York, which established: three classes of use-districts:— residence districts, business districts, and unrestricted districts; five classes of area districts; and five classes of height districts. The suit was brought by the vendor to enforce specific performance of a contract for the sale of land in the city. The vendee resisted on the ground that the contract

provided for a conveyance of the real estate "free from all encumbrances," and the said ordinance created an encumbrance thereon. The court, in upholding the validity of the ordinance, said, in part:

> "In a great metropolis like New York, in which the public health, welfare, convenience and common good are to be considered, I am of the opinion that the resolution was not an encumbrance, since it was a proper exercise of the police power. The exercise of such power, within constitutional limitations, depends largely upon the discretion and good judgment of the municipal authorities, with which the courts are reluctant to interfere.
>
> "The resolution in question simply regulates the use of property in the districts affected. *It does not discriminate between owners. It is applicable to all alike.*"

The second line of cases presents ordinances prohibiting the use of property for livery stables, public garages, grog shops, bill boards, and like purposes, without the consent of a certain percentage of the adjacent property owners. These decisions rest upon the ground that the use of property for such purposes constitutes a nuisance to the property owners living near. Typical of these cases is that of *Cusack* v. *City of Chicago*, 267 Ill. 344, 108 N. E. 340, 242 U. S. 526. The ordinance there provided:

> "It shall be unlawful for any person, firm or corporation to erect or construct any bill board or sign board in any block on any public street in which one-half of the buildings on both sides of the street are used exclusively for residence purposes; without first obtaining the consent in writing of the owners, or duly authorized agents of said owners, holding a majority of the frontage of the property, on both sides of the street, in the block in which such bill board or sign board is to be erected, constructed or located."

The plaintiff, an advertising company, which was seeking to maintain bill boards in the city of Chicago in violation of the foregoing ordinance, appealed this case from the Supreme Court of Illinois to the Supreme Court of the United States. The latter court, in its opinion, states:

"Upon the question of the reasonableness of the ordinance, much evidence was introduced upon the trial of the case, from which the Supreme Court finds that fires had been started in the accumulation of combustible material which gathered about such billboards; that offensive and insanitary accumulations are habitually found about them, and that they afford a convenient concealment and shield for immoral practices, and for loiterers and criminals. As bearing upon the limitation of the requirement of the section to blocks 'used exclusively for residence purposes,' the court finds that the trial court erroneously refused to allow testimony to be introduced tending to show that residence sections of the city did not have as full police or fire protection as other sections have, and that the streets of such sections are more frequented by unprotected women and children than, and are not so well lighted as, other sections of the city are, and that most of the crimes against women and children are offenses against their persons.

"Neglecting the testimony, which was excluded by the trial court, there remains sufficient to convincingly show the propriety of putting bill-boards, as distinguished from buildings and fences, in a class by themselves, *St. Louis Gunning Advertising Co.* v. *St. Louis,* 235 Missouri, 99, and to justify the prohibition against their erection in residence districts of a city in the interest of the safety, morality, health and decency of the community. * * * * *

"To this we may add that such a reference to a neighborhood of the propriety of having carried on within it trades or occupations, which are properly the subject of regulation in the exercise of the police power, is not uncommon in laws which have been sustained against every possible claim of unconstitutionality, such as the right to maintain saloons, *Swift* v. *People,* 162 Illinois 534, and as to the location of garages, *People* v. *Ericsson,* 263 Illinois 368. Such treatment is plainly applicable to offensive structures."

In *Eubank* v. *City of Richmond,* 226 U. S. 156, an ordinance similar in principle to the one in contest was declared to be an unreasonable and a discriminatory exercise of the police power, and therefore invalid and unconstitutional. The ordinance in that case provided:

"Whenever the owners of two-thirds of property abutting on any street shall, in writing, request the committee on streets to establish a building line on the side of the square on which their property fronts, the said committee shall establish such line so that the same shall not be less than five feet nor more than thirty feet from the street line. * * * * And no permit for the erection of any building upon said front of the square upon which such building line is so established shall be issued except for the construction of houses within the limits of such line."

In passing upon the ordinance the court observed:

"It leaves no discretion in the committee on streets as to whether the street line shall or shall not be established in a given case. The action of the committee is determined by two-thirds of the property owners. In other words, part of the property owners fronting on the block determine the extent of use that other owners shall make of their lots, and against the restriction they are impotent. This we emphasize. One set of owners determines not only the extent of use, but the kind of use which another set of owners may make of their property. In what way is the public safety, convenience, or welfare served by conferring such power? The statute and ordinance, while conferring the power on some property holders to virtually control and dispose of the property rights of others, creates no standard by which the power thus given is to be exercised; in other words, the property holders who desire and have the authority to establish the line may do so solely for their own interest, or even capriciously."

Of the numerous cases holding invalid ordinances requiring the consent of a percentage of the adjacent property owners for the erection of business structures within portions of a city defined as residential districts, the following are cited: *Spann* v. *Dallas*, (Tex.) 235 S. W. 513, 19 A. L. R. 1387; *People ex rel Friend* v. *Chicago*, 261 Ill. 16, 49 L. R. A. N. S. 438, 103 N. E. 609, Ann. Cas. 1915-A 292; *St. Louis* v. *Dorr*, 145 Mo. 466, 42 L. R. A. 686, 68 Am. St. Rep. 575, 41 S. W. 1094; *State ex rel Lachtman* v. *Houghton*, 134 Minn. 226, L. R. A. 1917-F, 1050, 158 N. W. 1017; *Willison* v.

*Cooke,* 54 Colo. 320, 44 L. R. A. (N. S.) 1030, 130 Pac. 828;
*People ex rel Lankton* v. *Roberts,* 90 Misc. 439, 153 N. Y.
Supp. 143, affirmed in 171 App. Div. 890, 155 N. Y. Supp.
1133; *Levy* v. *Mravlag,* (N. J.) 115 Atl. 350.

We are thoroughly convinced, not only by reason of the
apparently unanimous authority, but also from the stand-
point of reason and principle, that the ordinance in question
constitutes an unreasonable and discriminatory. exercise of
the police power and is therefore unconstitutional and void.
The peremptory writ of mandamus prayed for will be
awarded.

*Writ awarded.*