City of Buffalo, Plaintiff, v. The New York Central Railroad Company, Defendant.

Supreme Court, Erie County, November 2, 1925.

**Municipal corporations — smoke ordinance — ordinance of city of Buffalo enacted pursuant to Buffalo city charter (Laws of 1914, chap. 217), § 13, subd. 5, prohibiting emission of smoke or steam from railroad locomotives within said city — ordinance unreasonable and unconstitutional.**

The reasonableness of a municipal ordinance may be inquired into if passed pursuant to general authority of the Legislature, in the absence of any ratification by the Legislature after adoption by the local government. Moreover, when the manner of exercising the power is not specified, the power is general.

Accordingly, subdivision 5 of section 13 of the Buffalo city charter (Laws of 1914, chap. 217), which permits the enactment of an ordinance " to prohibit or regulate the use of locomotive engines and of steam   *   *   *   on any portion of any railroad within the city," is general rather than specific, and an ordinance of said city passed thereunder, prohibiting the emission of smoke or steam from railroad locomotives operating within said city, is grossly unreasonable. Said ordinance is unconstitutional as an interference with interstate commerce and a denial of the equal protection of the law, since it appears that the defendant, an interstate carrier operating more than 200 trains a day within said city, is made liable to a daily penalty of $250 for each violation of the provisions of said ordinance and that a like penalty is imposed against each employee in charge of its trains.

Appeal from an order of the City Court of Buffalo, denying defendant's motion to dismiss plaintiff's complaint for alleged failure to state a cause of action.

*Frederic C. Rupp,* for the plaintiff.

*Rann, Vaughan, Brown & Sturtevant,* for the defendant.

Crosby, J.:

The action was commenced in City Court to collect $250, being one day's penalty for defendant's alleged violation of what has been called on the argument and the briefs herein a " smoke ordinance."

The complaint alleges, among other things, " that pursuant to the power vested in the city of Buffalo (plaintiff) by its charter and by the General City Law, there was duly enacted *prior* to the first day of January, 1922, and on that day and at all times hereinafter mentioned was in force in the city of Buffalo, the following Ordinance," etc. The ordinance is then set forth in full. It contains two paragraphs, the first of which provides, among other things, that it shall be the duty of every railroad company operating locomotive engines within the city limits of Buffalo " to

51

file with the city clerk thereof, *on or before* January 1, 1922, plans for the abolishment of steam locomotives * * * which emit smoke or steam, * * * and for the substitution of electricity, or some other power than *steam.*"

The 2d paragraph of the ordinance provides, among other things, that " On and after the first day of January, 1923, it shall be unlawful for any railway to operate trains by the use of locomotive engines propelled by *steam power*, or by the use of any other power producing machine or device which emits *smoke or steam*," etc.   The ordinance then goes on to provide that the defendant pay a penalty of $250 for each offense; and a like penalty is visited upon each of defendant's employees or agents in charge of a locomotive used in violation of the ordinance.

The statutory authority for the passing of this ordinance, as I am informed by plaintiff's brief, is found in the charter of the city of Buffalo (Laws of 1914, chap. 217), as follows:

" Section 13. The council shall * * * enact ordinances: * * *

"(5) To *prohibit* or regulate the *use of locomotive engines*, and of *steam*, and to regulate other motive power and speed on any portion of any railroad within the city."

In quoting from the complaint, the ordinance and the statute, italics have been used to make more clear certain points now to be considered.

Upon this motion (which under the Code of Civil Procedure would have been called a demurrer) we assume the facts set forth in the complaint to be true.   If so, this ordinance was passed *prior* to January 1, 1922.   Whether a day or a week prior to January 1, 1922, does not appear.   But for anything appearing in the complaint the defendant may have been given only one day in which to prepare and " file * * * plans for the abolishment of steam locomotives " used within the city limits.   Upon the argument, as I recall, it was stated that the ordinance became effective about a month before January 1, 1922.   Whether the reasonableness of an ordinance may be inquired into, and whether, upon a motion of this kind, this court may take judicial notice of facts that are matters of common knowledge, are questions that will be considered later.   For the present we note that, if the facts set forth in the complaint be accepted as true, the defendant was given at least one day in which to prepare and file plans for what must of necessity be a stupendous financial and engineering operation.

By common consent this ordinance was treated upon the argument, and in the briefs, herein as a " smoke ordinance; " that is to say, an ordinance designed to abate a smoke nuisance.   We

note that the statute above quoted, which is the authority for the passage of the ordinance, does not specifically mention smoke at all; and the ordinance, though by its terms forbidding smoke as well as steam, forbids the use of steam as an agency for moving locomotives, even though the steam be generated by means causing no smoke.

In this age of steam a statute that seeks to invest a city government with power, by ordinances, " to prohibit [as well as regulate] the use of locomotive engines and of steam " is of doubtful validity. The constitutionality of a statute, as well as the reasonableness of an ordinance, ought to be tested not only by what is, but also by what may be, done under it.

The reasonableness of a statute may not be inquired into by the courts. The reasonableness of an ordinance may not be inquired into when passed pursuant to *specific* authority of the Legislature or if approved by the Legislature after adoption by a local city government; but may be inquired into if passed pursuant to *general* authority of the Legislature, unless ratified by action of the Legislature after adoption by the local government. (*Matter of Stubbe* v. *Adamson*, 220 N. Y. 459; *Safee* v. *City of Buffalo*, 204 App. Div. 561.)

In the first of these two cases the court denied the right to inquire into the reasonableness of an ordinance because, after adoption, it was ratified by an act of the Legislature; and in the second case, an ordinance, though passed pursuant to the *general* authority of the Legislature, and not approved by subsequent act of the Legislature, was upheld because found, as a matter of fact, to be reasonable. And in the second case above cited the court clearly defines the difference between *general* and *specific* legislative authority to pass ordinances.

" Before legislative authority to enact an ordinance can be said to be specific the grant must define ' its details and mode of enforcement.' (*People ex rel. Knoblauch* v. *Warden, etc.*, 216 N. Y. 154, 162.) The power is general when ' the manner of exercising it is not specified.' (*Village of Carthage* v. *Frederick*, 122 N. Y. 268.) Or when the ordinance has not been expressly ratified by the Legislature. (*Matter of Stubbe* v. *Adamson, supra; Anderson* v. *Steinway & Sons*, 178 App. Div. 507, 517.)"

There cannot be the slightest question that the legislative authority (statute hereinbefore quoted) for the passage of the ordinance involved in this case is general rather than specific within the definition given by the court in the case of *Safee* v. *City of Buffalo* (*supra*). Therefore, we may inquire into its reasonableness. To do that, and to do the subject justice, we must go beyond the facts

set forth in the complaint. To be sure, the complaint does show that defendant had at least a day (and fails to show that defendant had more time) in which to file plans for a complete change of its railroad and equipment within the city of Buffalo. That is unreasonable. But in trying to determine whether or no this ordinance is reasonable, I am persuaded that this court is not compelled to be ignorant of things everybody else in Buffalo knows; some of the most important of which are:

1. That the defendant is an interstate carrier.

2. That it is subject to control by the agencies of the Federal government.

3. That it will cost an immense amount of money to finance the operations commanded by this ordinance.

4. That it would reasonably require more than a day or even a month to prepare plans for so stupendous a task.

5. That defendant has no means of financing the required operation except by collecting the funds from patrons of the road in return for service, or borrowing upon its bonds money that must ultimately be paid from the same source.

6. That the consent of the Interstate Commerce Commission must be obtained before a bond issue can be floated.

These are matters of common knowledge and the court may take judicial notice of them. (*Schieffelin* v. *Hylan*, 236 N. Y. 254, 263, and cases therein cited.) And having taken judicial notice of these facts, they may be treated as if embodied in the complaint. (*Walsh* v. *Trustees, etc.*, 96 N. Y. 427, 438; *People* v. *O'Brien*, 78 Misc. 679, 681.)

With these facts before us the ordinance is not only unreasonable, but impossible. It was stated upon the argument and not denied that defendant operated over 200 trains a day of one kind or another in the city of Buffalo. That is a fact of which this court cannot take judicial notice, although everybody knows that many trains are operated. A penalty of $250 for each one, assessed against the defendant, and a like penalty against each servant in charge of such trains, such penalties being reassessed every day, create a situation where defendant can, in a real sense, be said to have been denied the equal protection of the law granted to criminals even, as well as to public service corporations upon whose continued existence the very life of commerce and the prosperity of the nation depends. The defendant is threatened with annihilation for having the temerity to resist this ordinance and test its validity. The penalties accumulated since the case was argued stagger the imagination. The situation constitutes a denial to defendant of the equal protection of the law. (*Cotting* v. *Kansas*

*City Stock Yards Co., etc.,* 183 U. S. 79, 99; *Ex parte Young,* 209 id. 123, 147.)

Whether or not it is good public policy to enact and enforce such an ordinance as the one here involved is a matter for the wisdom of the city government rather than for regulation by the courts. The many millions of dollars that the defendant would have to spend to obey the ordinance would sooner or later have to be collected from the public served by the defendant. That is not a matter which interests us here. But for the reasons above stated the ordinance seems to me to be grossly unreasonable, and, therefore, unconstitutional, as well as an unauthorized interference with interstate commerce. (*Welton* v. *State of Missouri,* 91 U. S. 275.)

The order of the City Court denying defendant's motion to dismiss the complaint is reversed.