CITY OF BISMARCK, a Municipal Corporation, Respondent, v. LAURA W. HUGHES and W. A. Hughes, Appellants.

(208 N. W. 711.)

**Constitutional law — courts cannot question the reasonableness or policy of statute enacting police regulations.**

1. The enactment of police regulations is a legislative function, and the courts cannot question the reasonableness or policy of a statute, and cannot interfere unless the statute is clearly repugnant to some constitutional guaranty.

**Constitutional law — legislature may grant power to certain cities to regulate construction of buildings.**

2. Chapter 175 of the Laws of 1923, granting to cities of over 6,000 inhabitants, the power to regulate and restrict the height, number of stories, and size of buildings, and other structures, the percentage of lot that may be occupied, the size of yards, courts, and other open spaces, the density of population, the location and use of buildings is a legitimate exercise of the police power, and the same is not in conflict with the Constitution of the state of North Dakota, nor the 14th Amendment to the Constitution of the United States.

**Municipal corporations — zoning ordinance presumptively valid.**

3. In construing the comprehensive zoning ordinance of the city of Bismarck, duly passed under chapter 175 of the Laws of 1923, every presumption is indulged in favor of its validity and the question, in determining its validity, is not whether the court approves the ordinance but whether it can pronounce it an unreasonable, arbitrary exercise of power.

**Municipal corporations — zoning ordinance restricting size of buildings held authorized and not unreasonable or arbitrary.**

4. The ordinance in the case at bar, restricting size of buildings, space and yards, in residence districts, is authorized by chapter 175, Session Laws 1923.

Note.—(1) Constitutional limitation on police power, see 6 R. C. L. 195; 2 R. C. L. Supp. 54; 4 R. C. L. Supp. 391; 5 R. C. L. Supp. 326; 6 R. C. L. Supp. 367.

(2) Constitutionality of statute or ordinance limiting the height of buildings, see annotation in 23 L.R.A.(N.S.) 1160; 4 R. C. L. 399; 1 R. C. L. Supp. 1132; 5 R. C. L. Supp. 241; 6 R. C. L. Supp 254; 19 R. C. L. 829; 3 R. C. L. Supp. 977; 5 R. C. L. Supp. 1048.

On the question as to power to establish building line, see annotation in 42 L.R.A.(N.S.) 1123; 44 L.R.A.(N.S.) 1030; L.R.A.1915C, 981; 4 R. C. L. 398; 1 R. C. L. Supp. 1131; 4 R. C. L. Supp. 268; 5 R. C. L. Supp. 241.

(3) Validity of zoning regulations generally, see annotation in 33 A.L.R. 289; 38 A.L.R. 1496; 6 R. C. L. Supp. 251.

It operates equally and alike upon all residents of each district, is not unreasonable or arbitrary and is clearly within the power granted to the city by the legislature.

Opinion filed March 16, 1926.

Constitutional Law, 12 C. J. § 222 p. 797 n. 35; § 390 p. 887 n. 38; p. 891 n. 74 New; § 392 p. 892 n. 87; p. 893 n. 90; § 415 p. 907 n. 10, 14, 15; § 434 p. 925 n. 26 New; § 442 p. 931 n. 31; § 443 p. 933 n. 39; p. 934 n. 48; § 1069 p. 1265 n. 61; p. 1266 n. 67, 69, 71, 77 New. Municipal Corporations, 28 Cyc. p. 282 n. 98; p. 737 n. 52 New; p. 774 n. 97, 98.

Appeal from the District Court of Burleigh County, *Jansonius*, J. Affirmed.

*W. L. Smith,* for appellants.

Chapter 175 of the Session Laws of 1923 violates the Constitution of the state and of the United States in that it takes private property for public use without compensation and deprives the citizen of his liberty and property without due process of law. Spann v. Dallas, 19 A.L.R. 1387, 235 S. W. 513; Milliken v. Weatherford, 54 Tex. 388; Re Hong Wah, 82 Fed. 623; People ex rel. Lankton v. Roberts, 90 Misc. 439, 153 N. Y. Supp. 143; Willison v. Cooke, 54 Colo. 320, 44 L.R.A.(N.S.) 1030, 130 Pac. 828; State v. Whitlock, 149 N. C. 542, 129 Am. St. Rep. 670, 63 S. E. 123, 16 Ann. Cas. 765; Fruth v. Board of Affairs, 75 W. Va. 456, L.R.A.1915C, 981, 84 S. E. 105.

Courts take judicial notice of facts and conditions in a state which cause a demand for the enactment of statutes. See Clark v. Nash, 198 U. S. 361, 49 L. ed. 1085.

The statute granting power to a municipal corporation is to be strictly construed, and any reasonable doubt as to the existence of a power must be resolved against the municipality. Syracuse v. Snow, 205 N. Y. Supp. 785; People ex rel. Friend v. Chicago, 261 Ill. 16, 19, 103 N. E. 609.

This ordinance limits the area of lots that may be covered by buildings and their accessories to 25 per cent of the lot area on inside lots and 45 per cent of the lot area on corner lots. This is an unreasonable limitation. State ex rel. Church v. Edgcomb, 108 Neb. 859, 189 N. W. 617; Barrett v. Rickard, 85 Neb. 769, 124 N. W. 153; Railway

Co. v. Illinois, 200 U. S. 561, 50 L. ed. 596; Byrne v. Maryland Realty Co. 129 Md. 202, L.R.A.1917A, 1216.

As to the validity of regulations fixing a building line and holding such regulations not within the police power and in the taking of private property without compensation, see Kansas City v. Liebi, 28 A.L.R. 295, 314, 252 S. W. 404.

*Newton, Dullam & Young,* for respondent.

It may be said in a general way that the police power extends to all the great public needs. Camfield v. United States, 167 U. S. 518, 42 L. ed. 260, 17 Sup. Ct. Rep. 864. It may be put forth in aid of what is sanctioned by usage or held by the prevailing morality or strong and preponderant opinion to be greatly and immediately necessary to the public welfare. Noble State Bank v. Haskell, 219 U. S. 104, 55 L. ed. 112.

We hold that the police power of a state embraces regulations designed to promote the public convenience or the general prosperity, as well as regulations designed to promote the public health, the public morals, and the public safety. Chicago, B. & Q. R. Co. v. Illinois, 200 U. S. 592, 50 L. ed. 596.

The interests of the individual are subordinate to the public good and the constitutional guaranties of the security of private property were not designed and do not operate to prohibit the reasonable restriction of its use by legislation enacted within the sphere of the police power for the promotion of the general welfare. Overton v. Harrington, 126 Md. 32, 94 Atl. 325.

*Richardson, Green & Wattam,* amici curiæ.

Esthetic considerations are a matter of luxury and indulgence rather than of necessity, and it is necessity alone which justifies the exercise of the police power to take private property without compensation. Cooper Co. v. Dammers, 125 Atl. 325.

It might add to the general attractiveness of the city to preserve this private vista, but, if so, it would seem to be a matter to be governed by an eminent domain principle, with compensation to the owner, rather than the zoning practice, with loss to him. Isenbart v. Barnett, 201 N. Y. Supp. 383.

While their reasoning recognizes the esthetic, their rulings, following the principles which have their origin in the common law concern-

ing individual and property rights, are definitely utilitarian. Not only is this manifested in the adjudicated cases, but it finds expression in the organic and statutory laws of the state and the charter and ordinances of its municipalities. State v. McKelvey, 256 S. W. 474.

The power thus granted to the board of review is too arbitrary and indefinite to be sustained. Goldman v. Crawther, 128 Atl. 50.

A council or commission is a miniature legislative body, and ordinarily is entitled to the presumption indulged with respect to statutes enacted by state legislatures. Cox v. Mignery, 105 S. W. 675; Pierce Oil Corp. v. Hope (Ark.) 191 S. W. 405.

BURKE, J. In 1923 the legislature passed the "Standard State Zoning Enabling Act," under which, municipalities can adopt zoning regulations, and which was prepared by the advisory committee on zoning, appointed by Secretary Hoover, Secretary of Commerce, Washington, D. C. There is in said zoning act a grant of power to cities in excess of 6,000 inhabitants to regulate and restrict the height, number of stories, and size of buildings and other structures, the percentage of lot that may be occupied, the size of yards, courts, and other open spaces, the density of population and the location and use of buildings, structures, and land, for trade industry, residence or other purposes. It is declared therein, "That such regulations shall be made in accordance with a comprehensive plan and designed to lessen congestion in the streets; to secure safety from fire, panic, and other dangers; to promote health, the general welfare; to provide adequate light and air, to prevent the over-crowding of land; to avoid undue concentration of population; to facilitate the adequate provisions of transportation, water, sewerage, schools, parks, and other public requirements. Such regulations shall be made with reasonable consideration, among other things as to the character of the district and its peculiar suitability for particular uses, with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout the city."

It provides for a zoning committee, and a board of adjustment to hear and decide appeals from and review any order, requirement or decision made by an administrative official charged with the enforcement of an ordinance and every decision of such board is subject to review by certiorari. Under and by virtue of said law the city of

Bismarck passed a comprehensive zoning ordinance, dividing the city of Bismarck into four districts namely, "A" resident district, "B" resident district, "C" commercial district, "D" industrial district.

The defendant Laura W. Hughes is the owner of lot 1, block 42 Northern Pacific Addition to the city of Bismarck, and said property is located in residence district "A," a corner lot at the intersection of 7th street and Ave. "C." The lot was vacant when the zoning ordinance was passed, and any building erected thereon, under said ordinance must have a front yard facing on 7th street at least 22 feet in depth, and a side yard on Ave. "C" of at least 10 feet in width; said building not to accommodate more than two families.

On the 14th of August, 1924, Mr. Hughes, husband of Laura Hughes appeared before the board of adjustment on petition to construct a four family apartment house on said lot, which petition was refused for the reason that the building of a four family apartment house on said lot would be a violation of the zoning ordinance.

On May 13, 1925, the board of adjustment having before it for consideration the appeal of defendant Hughes, from an order of the city commission denying the defendants' petition to build a four family house on said lot; after due consideration the action of the city commission denying such petition was duly approved. About May 2, 1925, the defendants began the construction on the property of a two story building 32 x 36 feet, intended to be used for living apartments for four families. The side yard on Ave. "C" at no point exceeds 2 feet, 6 inches, for a distance of 13 feet or more the building is flush with the street line on Ave. "C" and the front yard is 15 feet 3 inches in depth.

Plaintiff brought this action to restrain and enjoin the defendants from building the proposed building on said lot, for the reasons that it is in violation of said ordinance; in size and in open spaces on front and side streets.

Section 9, subdivision "C" of the ordinance reads as follows:

"In computing the depth of a front yard in the "A" and "B" residential districts, in portions which have been partly built up, where the average established depth of front yard of buildings with front yards fronting on one side of any given street between two cross streets exceeds the requirements under this ordinance, the depth of the front

yard of future buildings fronting on said portion of streets as required under this ordinance shall be increased to conform with such average, which need not, however, exceed 25 feet. If the average established depth of front yard is less than that required under this ordinance, the depth of the front yard may be decreased to conform with such average which shall in no case be less than 10 feet. No existing building shall be altered to decrease the depth of the front yard so that the same shall fall below or still further fall below the requirement of this paragraph for future building."

Under this section of the ordinance, the side street must be at least ten feet in width, and the size of the front yard is computed so as to prevent the building of new houses nearer the street than those already built.

From a judgment in the district court granting an injunction restraining the defendants from building the proposed building on said lot, the defendants appeal. It is the contention of the defendant, that the State Enabling Act, chapter 175 of the Laws of 1923, is unconstitutional and that zoning ordinance is also unconstitutional, in this to wit: (a) they take private property for public use without compensation; (b) they violate the 14th amendment to the Constitution of the United States, by depriving the owner of property without due process of law. The objections are urged against that part of the statute and ordinance, relating to the size of buildings, the size of yards, courts, and other open spaces and it is claimed that the regulation that the side yard on a corner lot must be at least ten feet in width and requiring new buildings to be in line with other residences on the same street are unreasonable, unconstitutional and void. Defendants further claim that, if the Enabling Act is constitutional it does not grant to the city, the power to pass such zoning ordinance.

The authority to limit the size of the buildings, the size of the yards, courts, and other open spaces is specifically granted in § 1, of the act, in the following language, viz.:

"It (the city) is hereby empowered to regulate and restrict the height, number of stories and size of buildings and other structures, the percentage of lot that may be so occupied, the size of yards, courts, and other open spaces, the location and use of buildings."

It is clear that the legislature has given the city commission specific

authority to enact such legislation by ordinance and there is no merit in defendant's claim that it did not. The defendants claim that if the power is granted, the enabling act is unconstitutional and void. Constitution, § 130 reads as follows:

"The legislative assembly shall provide by general law for the organization of municipal corporations, restricting their powers as to levying taxes and assessments, borrowing money and contracting debts, and money raised by taxation, loan or assessment for any purpose shall not be diverted to any other purpose except by authority of law."

This section is the only provision in the constitution relating to municipal corporations, and it leaves *the legislature entirely free to make regulations for the organization, government, and orderly building of cities by general law.*

The enabling act is a general law which applies to every city in the State of 6,000 inhabitants or more, and the ordinance is a general law that affects all parts of the city, and treats each section according to its own peculiar need, present and prospective. It operates equally upon all residents in zoning districts. It is not in conflict with the law of eminent domain for it does not take property, it only regulates its use. It is a legitimate exercise of the police power of the state, a power which § 134 of the Constitution recognizes and declares shall never be abridged. The police power is an attribute of sovereignty itself, under which, life, liberty, and property, are made safe. It is necessary for the preservation of the state and the welfare of society. It is a legislative function without limitation, except that it must not conflict with the state or Federal Constitution, and unless the statute is clearly repugnant to some constitutional guaranty, the courts cannot interfere. The police power is one of the most essential powers of the government, and one of the least limitable, and the imperative necessity for its existence precludes any limitation upon it when not arbitrarily used. All rights are subject to the police power. Hadcheck v. Sebastian, 239 U. S. 394, 60 L. ed. 348, 36 Sup. Ct. Rep. 143, Ann. Cas. 1917B, 927; Boston Beer Co. v. Massachusetts, 97 U. S. 25, 24 L. ed. 989; L'Hote v. New Orleans, 177 U. S. 587, 44 L. ed. 899, 20 Sup. Ct. Rep. 788; Thomas Cusack Co. v. Chicago, 242 U. S. 526, 61 L. ed. 472, L.R.A.1918A, 136, 37 Sup. Ct. Rep. 190, Ann. Cas. 1917C, 594; Reiman v. Little Rock, 237 U. S. 171, 59 L. ed. 900, 35

Sup. Ct. Rep. 511; Armour & Co. v. North Dakota, 240 U. S. 510, 60 L. ed. 771, 36 Sup. Ct. Rep. 440, Ann. Cas. 1916D, 548; Bacon v. Walker, 204 U. S. 311, 51 L. ed. 499, 27 Sup. Ct. Rep. 289; Green v. Frazier, 253 U. S. 233, 64 L. ed. 878, 40 Sup. Ct. Rep. 499; Buffalo v. New York C. R. Co. (Nov. 1925) 125 Misc. 801, 212 N. Y. Supp. 1; Stubbe v. Adamson, 220 N. Y. 459, 116 N. E. 372; Safee v. Buffalo, 204 App. Div. 561, 198 N. Y. Supp. 646; Des Moines v. Manhattan Oil Co. 193 Iowa, 1096, 23 A.L.R. 1322, 184 N. W. 823, 188 N. W. 921. In the case of People ex rel. Detroit & H. R. Co. v. Salem, 20 Mich. 452, 4 Am. Rep. 400, Judge Cooley said: "Questions of policy are not submitted to judicial determination, and the courts have no authority of supervision over the exercise of discretion, which under our system is reposed in the people."

To meet the great demand for zoning legislation, Secretary Hoover appointed a commission of experts to prepare a "Standard Enabling Act" which would stand the constitutional test and the act so prepared has been the basis of the "Enabling Acts" of twenty states, including North Dakota. On January 1, 1925, zoning ordinances were in effect in 320 municipalities with an aggregate population of 24,000,000 citizens. This "Enabling Act" is a general delegation of power to the city to regulate and control the use of property in zoning districts established by ordinance. It says to the city: "You may establish zoning districts and restrict the height, number of stories, and size of buildings, the percentage of lot to be occupied, the size of yards, courts, and other open spaces." It then gives the reasons which makes such regulations necessary, viz., "safety from fire, panic, and other dangers, to promote health, and general welfare, to provide adequate light and air, to prevent the over-crowding of land, undue concentration of population, to facilitate adequate provisions of transportation, water sewerage, school, parks, and other public requirements," apparently good and valid reasons which justify the enactment of zoning legislation. The "Enabling Act" provides that, "Such regulations shall be made in accordance with a comprehensive plan and shall be made with reasonable consideration, among other things as to the character of the district and its peculiar suitability for particular uses, with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout such city."

The questions involved in this case namely, the restriction of the size of buildings, yards, and open spaces, have been many times in the courts in recent years. On July 3, 1925, the Supreme Court of the State of Minnesota, in the case of State ex rel. Beery v. Houghton, 164 Minn. 146, — A.L.R. —, 204 N. W. 569, overruled a former decision and sustained the comprehensive zoning ordinance of Minneapolis, excluding apartments for four families from residential districts. On December 16, 1925, the supreme court of Illinois upheld the zoning ordinance in the case of Deynzer v. Evanston, 319 Ill. 226, 149 N. E. 790.

In this case the property owner made application to the city council for permission to build an apartment house, in a zoning residence district, which precluded apartment houses. She claimed that the property would be worth at least three times as much if improved by an apartment house, and that the ordinance was unconstitutional, that it took her property without due process of law in violation of the state and federal constitutions, that it was a cloud upon her title and made for the express purpose of preventing appellant from erecting an apartment house upon her property. The same questions that are raised by the appellant in the case at bar, and all were decided adversely to appellant's contention. On the same date the Supreme Court of Illinois upheld zoning ordinance in the case of Aurora v. Burns, 319 Ill. 84, 149 N. E. 789. This case involved the question of the exclusion of a grocery store from the zoning resident district, and the ordinance, which is a facsimile of the zoning ordinance in the case at bar, was upheld as a legitimate exercise of the police power. Wulfsohn v. Burden, 241 N. Y. 288, 43 A.L.R. 651, 150 N. E. 120.

On August 13, 1925, the Supreme Court of California in the case of Fourcade v. San Francisco, 196 Cal. 655, 238 Pac. 934, sustained the zoning ordinance of the City of San Francisco.

On February 27, 1925, in the case of Miller v. Board of Public Works, 195 Cal. 477, 38 A.L.R. 1479, 234 Pac. 381, the supreme court of California sustained the Los Angeles zoning ordinance which is a facsimile of the ordinance in the case at bar, and again on the same date in the case of Zahn v. Board of Public Works, 195 Cal. 497, 234 Pac. 388. On March 14, 1925, the case of A. C. Blumenthal & Co. v. Cryer, 71 Cal. App. 668, 236 Pac. 216, the Los Angeles

Zoning Ordinance was again sustained. The supreme court of the state of Wisconsin in an elaborate opinion in the case of State ex rel. Carter v. Harper, 182 Wis. 148, 33 A.L.R. 269, 196 N. W. 451, upholds the zoning ordinance as a proper exercise of police power. Lincoln Trust Co. v. Williams Bldg. Corp. 229 N. Y. 313, 128 N. E. 209; Headley v. Fennell, 124 Misc. 886, 210 N. Y. Supp. 1102; State ex rel. Civello v. New Orleans, 154 La. 271, 33 A.L.R. 260, 97 So. 440; Des Moines v. Manhattan Oil Co. 193 Iowa, 1096, 23 A.L.R. 1322, 184 N. W. 823, 188 N. W. 921; Windsor v. Whitney, 95 Conn. 357, 12 A.L.R. 669, 111 Atl. 354. To the same effect is the opinion by the Justices of the supreme court of Massachusetts in Noyes v. Noyes, 234 Mass. 597, 125 N. E. 604; Inspector of Buildings v. Stoklosa, 250 Mass. 52, 145 N. E. 262; Brett v. Building Comr. 250 Mass. 73, 145 N. E. 269; Pritz v. Messer, 112 Ohio St. 628, 149 N. E. 30.

January 8, 1925, the legislature of the state of Maine submitted to the supreme court, an enabling zoning act, and the court in a very guarded opinion upholds the zoning act, but says that, "Regulation of density of population by establishing building lines is probably unjustified under the police power." Opinion of Justices, 124 Me. 501, 128 Atl. 181.

Ohio, Illinois, Connecticut, New York, Wisconsin, Minnesota, California, Iowa, Massachusetts, Virginia, Louisiana, and Kansas upholds city zoning ordinances. New Jersey, Texas, Maryland and Missouri have held zoning ordinances invalid. The leading case in New Jersey and one upon which the defendants rely, is the case of State ex rel. Ignaciunas v. Nutley, 99 N. J. L. 389, 125 Atl. 121. In this case the court held, "That the ordinance under consideration so far as it prevents the use of the respondent's property for the purpose for which he desired to use it, is not authorized by the statute under which it purports to have been adopted, and to that extent is null and void." That is, the ordinance was not void, the statute was not void, but that part of the ordinance which was unauthorized by the statute was void. The inference is that if the statute had authorized the restriction of the use of property, the ordinance would be valid. That seems to be the view of the New Jersey court in the case of Manning v. Hague, — N. J. L. —, 128 Atl. 375. In this case the court had before it an ordinance of Jersey City, requiring applications to build-

ing departments, for permit to convert frame dwellings to other uses. Application was made to the zoning commission and was refused, and on appeal to the commission it was again refused. The court says, "If these were the only matters requiring our consideration it might well be that the situation would be controlled by State ex rel. Ignaciunas v. Nutley, supra. But we have the amendments to the building code above referred to,". and because of the amendment to the building code, the court held that the requirements of the ordinance were held to be a reasonable exercise of the police power. The Nutley Case was followed in the case of Steinberg v. Bigelow, — N. J. L. —, 131 Atl. 114, and Scola v. Senior, — N. J. L. —, 130 Atl. 886.

The leading case in Texas is Spann v. Dallas, 111 Tex. 350, 19 L.R.A. 1387, 235 S. W. 513. The ordinance in the Spann Case is unconstitutional for it delegates legislative power to three-fourths of the property owners of the district, and, like the Colorado case, it does not operate equally on the residents of the district, for the property owners might grant the privilege to some and deny it to others. The same is true of the case of Austin v. Thomas, 96 W. Va. 628, 38 A.L.R. 1490, 123 S. E. 590; Eubank v. Richmond, 226 U. S. 137, 57 L. ed. 156, 42 L.R.A.(N.S.) 1123, 33 Sup. Ct. Rep. 76, Ann. Cas. 1914B, 192; and Willison v. Cooke, 54 Colo. 320, 44 L.R.A.(N.S.) 1030, 130 Pac. 828.

The case of Goldman v. Crowther, 147 Md. 282, 38 A.L.R. 1455, 128 Atl. 50, is relied upon by the defendants. In this case the defendant Goldman undertook to use the basement of a four story dwelling, for repairing by hand, "used clothing." He placed therein an ordinary sewing machine, and there was no repairing on the building of any kind. While this case reviews the authorities at considerable length it would seem as though the use of the basement for the purpose named could not interfere, injure, or offend any one in any way, and that it was unreasonable and arbitrary to refuse the defendant a permit.

The case of Pennsylvania Coal Co. v. Mahon, 260 U. S. 415, 67 L. ed. 322, 28 A.L.R. 1321, 43 Sup. Ct. Rep. 158, discussed in the opinion in the Crowther Case, is not in point. In this case the court held, "That the city could not prevent the mining of coal under streets in the city, in places where the right to mine such coal had been re-

served. . . . The rights of the public in a street purchased or laid out by eminent domain are those it has paid for. . . . If in any case, its representatives have been so short sighted as to acquire rights without the right of support, we see no more authority for supplying the latter, without compensation than was for taking the right of way, in the first place, and refusing to pay for it."

In the case of State ex rel. Penrose Invest. Co. v. McKelvey, 301 Mo. 1, 256 S. W. 474, and St. Louis v. Evraiff, 301 Mo. 231, 256 S. W. 489, the supreme court of Missouri holds that the state cannot empower a city to prohibit by ordinance the building of business houses in residence districts; that such prohibition takes private property for public use, without compensation, and violates article 2 of the Constitution of the state of Missouri, which prevents the taking of private property for public use without compensation. There is a strong dissenting opinion by Justice White, concurred in by two other members of the court.

A zoning ordinance was held invalid in the case of Ambler Realty Co. v. Euclid (D. C.) 297 Fed. 307. That opinion declares that "under the ordinance the plaintiff's property fronting on Euclid Ave. to a depth of 150 feet, was restricted to single family dwellings, the next 470 feet in the rear to two family dwellings, next 130 feet farther to the rear, to apartment dwellings and not for any form of trade, or industry, and the remaining 150 feet north, might be used for industrial and manufacturing purposes, many additional restrictions were imposed, as to height of any, and all kinds of buildings. The entire village comprising nearly 16 square miles, and largely farm land, was restricted in like manner, and no provision was made for the opening of highways. The evidence clearly shows that the ordinance impairs the salability of the land, it depresses its market value to the extent of several hundred thousand dollars. The court further says: "In the last analysis, the result to be accomplished is to classify the population and segregate them according to their income or situation in life. The true reason why some persons live in a mansion and others in a shack." In the Euclid Case the court cites as leading cases, the case of Spann v. Dallas and Willison v. Cooke, supra; Eubank v. Richmond, 226 U. S. 137, 57 L. ed. 156, 42 L.R.A. (N.S.) 1123, 33 Sup. Ct. Rep. 76, Ann. Cas. 1914B, 192. In the latter case the Su-

53 N. Dak.—54.

preme Court of the United States had squarely before it a city ordinance of the city of Richmond, establishing building lines.

The court said, "The supreme court of the state sustained the statute saying, . . . that it was neither 'unreasonable' nor 'unusual,' and that the court was justified in concluding that it was passed by the legislature in good faith and in the interest of the health, safety, comfort, and convenience of the public, and for the benefit of the property owners, generally who were affected by the provisions; and that the enactment tends to accomplish all, or, at least, some, of these objects." The court further said: "That the validity of such legislation is generally recognized and upheld as an exercise of the police power." The court then quotes from many former decisions upholding police regulations, and then proceeds to show how, under the ordinance in question, one set of owners determines not only the extent of use but the kind of use which another set of owners may make of their property. "One person having a two-thirds ownership of a block may have that power against a number having a less collective ownership." "The ordinance . . . leaves no discretion in the committee on streets, as to whether the street line shall or shall not be established in a given case. The action of the committee is determined by two thirds of the property owners." "This, as we have said is the vice of the ordinance and makes it, we think, an unreasonable exercise of police power." "We need not consider the power of the city to establish a building line or regulate the structure or height of the building." This case does not decide any of the questions involved in the case at bar. The court says, "That the vice in the ordinance is the delegation of power to two-thirds of the property owners," and the same defect is found in the Spann Case, in Austin v. Thomas and Willison v. Cook.

The early decisions are against zoning, but since the adoption of the "Standard Enabling Act," and the enactment of the "Standard Zoning Ordinance" by so many states, the late decisions nearly all favor zoning legislation. Each ordinance must stand or fall on its merits, but every presumption is in favor of its validity and the question to determine is not, does the ordinance meet with the approval of the court, but can the court say that it is an unreasonable arbitrary exercise of power?

The enabling act authorized the city to pass the zoning ordinance,

and the questions before this court are, are the restrictions in the ordinance as to size, courts, and yards, unreasonable and arbitrary? First, is the provision in the ordinance excluding apartments for more than two families unreasonable? We think not. Zoning ordinances restricting buildings to single family dwellings are upheld by the great weight of authority. There is less danger from fire in a building occupied by two families than there is in a building occupied by four families, and the contemplated building in the case at bar is for four families. Second, is the provision in the ordinance requiring a side yard on corner lots of at least 10 feet unreasonable? If there is to be any yard at all on the side street it would seem as though it ought to be at least 10 feet in width, to be of any use. Such restrictions would lessen congestion in the streets and contribute to the safety from fire, panic, automobiles and other dangers. The provision in the ordinance relating to the front yard is likewise in the interest of safety, and is intended to prevent the erection of new buildings nearer the front street, and out of line with other buildings on the same street. Surely this is a reasonable and safe regulation. It is difficult to understand, why any man would want to build nearer the front street than his neighbors, for such building would make the neighborhood less desirable as a residence district.

The defendant W. A. Hughes as a witness testified, that the proposed building, is in the old part of the city, one of the oldest residence districts of the city, that it is something like midway between the capitol and the business section, a little nearer the business section than the capitol, that 7th street is one of the principal streets that run directly from the business section to the capital, and the map showing the zoning district, and which is a part of the ordinance and an exhibit in the case, corroborates the testimony of Mr. Hughes. Seventh street is an important street in a residence district, quite a long way from the business district and there are no apartment houses on said street.

There was a time when a "man's home was his castle," and when "There was no place like home though ever so humble." Now we are told that in a few years there will be no homes, that every one will be living in hotels and apartment houses and eating in restaurants. The breaking up of the home and the raising of children in hotels, apart-

ment houses, and upon the streets is responsible for the great increase in the delinquency among children and for the increase in crime. The establishing of zoning residence districts and regulations encouraging the building of homes with yards for children to play in, to work in, and grow healthy in, doubtless influenced the legislature to pass the enabling act, to promote the general welfare of the city and its people.

We have examined carefully the claims of the defendants in relation to the passage of the ordinance, the penalty prescribed and the kind of action necessary for enforcement, and they are without merit and the judgment is affirmed.

CHRISTIANSON, Ch. J., and NUESSLE and JOHNSON, JJ., and WOLFE, Dist. J., concur.

BIRDZELL, J., not participating; Honorable CHAS. E. WOLFE, Judge of the Third Judicial District, sitting in his stead, by request.