## ALFRED L. MILLER et al., Appellants, v. FLORENCE C. CONNOR.

### Division One, May 31, 1913.

1. **APPELLATE JURISDICTION: Constitutional Question: Liability Under Statute of Another State.** The Supreme Court has jurisdiction "in cases where the validity of a treaty or statute of or authority exercised under the United States is drawn in question;" but the validity of no such treaty or statute or authority is drawn in question in a suit by the creditors of a bank in Colorado, which has there been adjudged insolvent, against stockholders in this State, seeking to hold them liable for the bank's debts, under a statute of that State, which makes stockholders of a bank liable for its debts in double the par value of the stock held by each.

2. ————: ————: **How and When Raised: General Rules.** In order to bring an appeal within the jurisdiction of the Supreme Court on the ground that "the case involves the construction of the Constitution of the United States or of this State," certain precedent conditions must be met: *first,* it must appear that a constitutional construction was essential to a determination of the case; *second,* it must appear that a constitutional question was raised in the trial court, and ruled on to the disadvantage of appellant; *third,* the constitutional question cannot be injected into the case for the first time by argument or brief of counsel; and, *fourth,* it must be raised timely in the trial court and kept alive in the course of orderly procedure—in the pleadings, if due to be found there; if not, then at the first opportunity; and, sometimes on the rulings on the admission of evidence, but in that case should be kept alive in the motion for a new trial and (if necessary) in the instructions; and, in rare cases, it may be raised for the first time in the motion for a new trial or in the instructions.

3. ————: ————: **Not Apparent from Record.** Although there was an argument of counsel for defendant wherein it was sug-

gested that, if the court admitted the decree of a Colorado court in a suit by creditors of a bank against all stockholders, seeking to hold them for its debts under a statute which makes them liable in double the par value of their stock, in which defendant was sued but not served with process and which found against her and all other stockholders in the amount of fifty-three per cent of the par value of their stock, it would be to hold her without due process of law under specified sections of the Federal and State Constitution, yet if there were many other suggestions for the exclusion of the decree, and it cannot be ascertained which one of them operated on the mind of the trial court in his ruling excluding it, and plaintiffs do not complain in their motion for a new trial or in their briefs of any infringement upon their constitutional rights by the ruling, the construction of either Constitution is not so involved in a jurisdictional sense as to give the Supreme Court jurisdiction of plaintiff's appeal.

Appeal from St. Louis City Circuit Court.—*Hon. George H. Williams*, Judge.

TRANSFERRED TO ST. LOUIS COURT OF APPEALS.

*Stephen C. Rogers* for appellants.

*Walter H. Saunders* for respondent.

LAMM, J.—This cause is transferred here from the St. Louis Court of Appeals, its mandate running on the theory that "a constitutional question—State and United States—is involved." No opinion accompanies the mandate and we are left to feel after the constitutional question, if happily we may find it, precisely as did that court.

If our learned brethren had pointed out the constitutional questions and how they were "involved," in a constitutional sense, so as to give this court jurisdiction, it might have aided in persuading us to their view, but (being left to our own resources) we have come to a view presently announced.

Attending to the pleadings, the suit is to recover $214 from defendant. It is alleged that she held two shares of stock in the State Bank, a bank organized

under the laws of and doing business in Colorado; that under Colorado laws shareholders are individually responsible for bank debts, contracts, or engagements, in double the par value of the stock owned by each; that in June, 1899, said bank made an assignment; that in 1905 plaintiffs, creditors of the bank, sued in the district court of the county of Denver in Colorado for an accounting and to ascertain the *pro rata* amount due by the respective stockholders under the double liability statute—the bank, its assignee and non-resident stockholders (including defendant) were made parties defendant; that said district court had jurisdiction; that the bank and its assignee, duly served, made default; that a certain defendant, Kipp, entered his voluntary appearance and filed an answer, but that no service was had on the other defendants who were non-residents of Colorado.

It is further alleged that in the Colorado suit judgment was rendered finding the total liability of the stockholders to be $160,000; that after converting the other assets of the bank into cash and collecting on the liability of the resident stockholders and applying same, the remaining unpaid debts aggregated the rise of $84,000; that defendant as a stockholder was decreed to owe fifty-three and one-half per cent of her total stock liability on said indebtedness, to-wit, $214; that plaintiffs in that suit (plaintiffs in this) were appointed and authorized to represent all the creditors and to sue for their benefit in collecting amounts due on the stockholders' liability of non-residents to be divided ratable among the creditors; that to that end plaintiffs were given full power and authority to settle and compromise said claims or suits for stock liability.

(*Note*: If this peculiar decree is based on a Colorado statute, such statute was not pleaded or offered in evidence.)

The petition then goes on to allege that defend-ant has paid nothing on said liability though demand has been made. Having pleaded the Colorado statute making stockholders individually liable in double the amount of the par value of their respective stock-holdings as aforesaid and that plaintiffs were prose-cuting the action as trustees for the creditors, it was next alleged that defendant (by virtue of said Colo-rado statute and the decree, entered in said Colorado court on the 28th day of May, 1907) was indebted in the said sum of $214, etc.

Demurrers were filed and overruled, but they are not brought here and no question is raised on them. Not only so but defendant answered over by general denial and a plea of the five-year Statute of Limita-tions.

Plaintiffs replied by a denial.

So much for the pleadings.

At the trial a jury was waived, the evidence was heard and no instructions were asked.

The motion for a new trial covered eight grounds, none of them of a constitutional complexion.

Turning to the trial, the following is the fash-ion of it:

Plaintiffs offered a certified copy of the incorpo-ration of the State Bank, which we will call "X." To the offer of X defendant objected on the ground the petition did not state a cause of action (quoting) "for reasons set out in the answer heretofore filed and in the amended demurrer raising constitutional ques-tions." This objection was overruled.

Plaintiffs next offered a certified copy of the bank's deed of assignment which we will call "Y." This was objected to, but on no constitutional ground that we can discover. Not only so, but this objection was also ruled in favor of plaintiffs.

Plaintiffs next offered a certified copy of the dou-ble-liability act of the General Assembly of the State

of Colorado, which we will call "Z." The defendant objected to the offer, but on no constitutional ground. Not only so, but the court also ruled in favor of plaintiffs in this instance and admitted the certified copy.

Plaintiffs next offered a certified copy of the decree and findings of the Colorado court referred to in (and sustaining the averments of) the petition, which we will call "A." The objections made by defendant to A were as follows, in substance: (1) because under the issues the proof was immaterial, irrelevant and incompetent; (2) because the judgment was not properly authenticated under the act of Congress; (3) because defendant was not served and was not a party to the proceeding; (4) because the decree was continued in the Colorado court for any further necessary orders and ascertainments at its foot; and (5) because it was apparent on the face of the pleadings that the cause of action arose in 1899 (the date of insolvency) and nothing was shown to operate as a waiver of the Statute of Limitations or to relieve the running of its bar.

At this point, the record shows the court inquired of defendant's attorney the date of the decree. To that inquiry he replied it was dated the 28th day of May, 1907; that he then proceeded to argue that the cause of action was not based on the decree, but on a cause of action fixed by the Colorado statute; that it could not be based on the decree, because his client was not a party to the proceeding in Colorado, and to hold her on the decree would be contrary to the Fourteenth Amendment to the Constitution of the United States and section 30, article 2, of the Constitution of Missouri. Thereupon the court suggested he would hear attorneys further on the question of the Statute of Limitations. At the end of the discussion he ruled the certified copy of the Colorado judgment inadmissible as evidence.

There was next some oral testimony, immaterial to the question of jurisdiction, and at the heels of it the court found for defendant and plaintiffs appealed.

The case hinging on the ruling on evidence, when appellants came to brief their case in the Court of Appeals they made the following points in substance:

First: The Colorado decree was admissible in evidence because the cause of action arose in Colorado and is covered by the limitation statute of that State.

Second: In order to rely on the Colorado statute of limitations it should have been pleaded.

Third: The cause of action did not arise (i. e., limitation did not begin to run) until a judicial ascertainment was had at the date of the decree, 1907, not in 1899, the date of insolvency.

Fourth: Defendant having voluntarily become a stockholder, thereby she submitted herself to the jurisdiction of the Colorado courts—she sought the benefits and must assume the burden.

Fifth: The decree of the Colorado court is *prima-facie* good.

*Contra*: The respondent in her brief argues that the Colorado decree was properly rejected, because (her counsel says):

Defendant was not a party to that suit and the Colorado decree could not bind her under the due process clauses of the Federal and State constitutions.

Furthermore, it was not a final decree and hence was properly excluded.

Moreover, the Statute of Limitations began to run from the insolvency of the bank, hence its bar was complete.

Finally, defendant's counsel makes these further points: The Missouri statutes on stock subscriptions are not applicable; there was no presumption that the common law obtained in Colorado; not being a party to the Colorado suit defendant was not bound by privity between the corporation and herself on the the-

ory of representation; and, lastly, the certified copy of the Colorado decree should have been rejected because there was no proof defendant was the owner of two shares of stock.

On such record, including briefs, we are of opinion we have no jurisdiction.

This is so because:

(a) We have jurisdiction "in cases involving the construction of the Constitution of the United States or of this State; in cases where the validity of a treaty or statute of or authoriy exercised under the United States is drawn in question." [Constitution, art. 6, sec. 12.] Evidently the validity of a treaty or statute of or authority exercised un-

**Appellate Jurisdiction: Constitutional Question.** der the United States is not drawn in question in this case so as to raise a Federal question. If the issue is merely one of compliance with, or interpretation or construction of a Federal statute, such issue does not challenge the validity of such statute so as to raise a Federal question and give us jurisdiction. [Carey v. Schmeltz, 221 Mo. 132; Schwyhart v. Barrett, 223 Mo. 497.] Nor is the "full faith and credit" clause invoked or involved in a jurisdictional sense.

(b) The final and turning question is: Does the case *involve* the construction of the Constitution of the United States or of this State?

(1) At the outset it may not be unprofitable to remind ourselves of some of those general rules found useful in determining when the construction of the State or Federal Constitution is "involved" is a jurisdictional sense. Thus:

In order to bring an appeal within our jurisdiction on a constitutional ground, it must appear that a constitutional construction was essential to the determination of the case. [State ex rel. v. Smith, 176 Mo. l. c. 47, 48, where the cases are collected; City of Tarkio v. Loyd, 179 Mo. l. c. 605.]

So, it must appear that a constitutional question was raised in the trial court and ruled on to the disadvantage of the party appealing. [State ex rel. v. Smith, supra; Bennett v. Railroad, 105 Mo. l. c. 645; Parlin & Orendorff Co. v. Hord, 145 Mo. l. c. 119; Hanlon v. Pulitzer Pub. Co., 167 Mo. l. c. 123; Brown v. Railroad, 175 Mo. l. c. 188; Shell v. Railroad, 202 Mo. l. c. 344 et seq.]

So, constitutional questions cannot be injected into a case for the first time in the appellate court by argument or brief of counsel for the purpose of giving jurisdiction. [Town of Kirkwood v. Johnson, 148 Mo. l. c. 636-7, and cases cited.] So that if one for the first time faintly appears in respondent's brief, *arguendo*, it would not give us jurisdiction.

So, a constitutional question must be raised timely in the course of orderly procedure. Accordingly it should be raised in the pleadings if due to be found there. If not, then at the first opportunity and kept alive. [Lohmeyer v. Cordage Co., 214 Mo. l. c. 690, and cases cited.]

So, to meet the justice of the case in exigencies, sometimes it may be raised on rulings on the admission of evidence, but in that event it self-evidently should be kept alive in the motion for new trial and (if necessary) in the instructions.

So, in rare cases, under circumstances not material here, it may be raised for the first time in the motion for new trial or in the instructions. [Wabash Railroad Co. v. Flannigan, 218 Mo. l. c. 569, et seq.; Hartzler v. Railroad, 218 Mo. l. c. 564.]

There are other rules, but the foregoing suffice for our purposes in this case.

(2) Now, applying those established standards for testing out the question whether a construction of the Constitution is involved in a jurisdictional sense in this case, it is evident that on this record there is no such constitutional question lodged here.

Observe, it is not in pleadings, instructions or motions for a new trial. In those items of evidence we designated X, Y and Z the ruling below was in favor of appellants. Hence, if such question was ambushed there (which we do not rule) appellants cannot complain of the favorable ruling.

To the item of evidence designated A, there were many objections. Finally there was an argument by counsel for defendant in which it was suggested that if the court admitted the Colorado decree as binding on her the effect would be to hold her without due process of law under specified sections of the Federal and State Constitution. But as there were many other reasons suggested for the exclusion of the decree, which one of them was operative on the mind of the trial court is entirely dark. It, therefore, cannot be held that a constitutional construction was essential to the determination of the case, or was ruled adversely to appellants. [City of Tarkio v. Loyd, 179 Mo. l. c. 605.] Besides that (and singularly enough) appellants seem to be unaware of the infringement of any constitutional right; for they complained not in that behalf in their motion for a new trial, and do not contend in their brief they were denied any such right invoked by them at the trial. When learned counsel, with eyes sharpened by the affliction of defeat, cannot see a coign of vantage, is it not likely to be a will of the wisp or mare's nest? Under such circumstances we cannot very well hold that a constitutional question is involved on this appeal in a jurisdictional sense.

Accordingly this case is retransferred to the St. Louis Court of Appeals where it belongs for determination. All concur.