STATE v. K. L. LAWING.

(Filed 26 November, 1913.)

1. **Cities and Towns — Fire Districts—Police Powers—Legislative Power—Constitutional Law.**

It is within the valid exercise of the police power of the State for the Legislature to confer authority upon an incorporated town to establish fire limits for the protection of the property of its citizens, wherein houses of wood may not be erected or repaired; and where the town has accordingly passed an ordinance establishing a fire district within its business section, it is an unlawful violation thereof to replace with iron or metal roofing the old and worn-out shingles on an old frame structure; for a repair of this character looks to the continued use of the kind of buildings prohibited, and is not such slight repairs as are necessary to make it habitable, such as putting in broken windows or hanging a shutter, etc.

2. **Cities and Towns—Fire Districts—Discretionary Powers—Courts.**

The courts will not pass upon the reasonableness of fire limits established by an incorporated town under authority conferred

by the Legislature, at least where the limits established appear to be reasonable, and without palpable oppression or injustice done.

APPEAL by State from *Webb, J.,* at September Term, 1913, of LINCOLN.

*The Attorney-General and A. L. Quickel for the State.*
*L. B. Wetmore for defendant.*

CLARK, C. J. The charter of Lincolnton, Laws 1899, ch. 369, sec. 70, provides: "Said board of aldermen may establish fire limits in said town, within which it shall be unlawful for any person to erect, construct, or *repair* any building of wood or other material inflammable or peculiarly subject to fire."

Under authority of above provision of law, the aldermen enacted Town Ordinance, sec. 34, as follows: "No person shall erect any building or structure unless the outer walls thereof be of brick, stone, or concrete, and covered with metal, stone, or other noninflammable roofing, within the fire limits as designated by section 33, on page 8 of the printed Ordinances of said town; nor shall any person remove any building, not so constructed, from without into said prescribed fire limits, nor from one place to another within said fire limits: *Provided,* the above ordinance shall not apply to the construction or repair of hitching stalls within said fire limits." The prescribed fire limits are very restricted, and are in the center of the town and mostly abutting on the courthouse square.

It appears from the special verdict that within the fire limits of the town the defendant owns a hotel building, consisting of a main building three stories high, constructed of brick, with a two-story ell extending out therefrom, and the ell (constructed prior to the establishment of any fire limit in the town) is of wood, being an ordinary frame building with a shingle roof. The roof of shingles had become decayed and in such a rotten condition that it leaked badly. The defendant, after the passage of the ordinance above quoted, removed the old rotten shingle roof and re-covered the same with sheet-iron.

S. *v.* LAWING.

It cannot be doubted that the people of the State, acting through their Legislature, have authority to authorize the governing body of any town to establish fire limits for the protection of life and property therein which would be endangered by fire. There is nothing here to show that the town authorities have acted unreasonably in the establishment of fire limits. Whether they have acted with judgment or not is a matter for the people of the town, who can correct their action, if not agreeable, by making their wishes known to the authorities, or by the election of a new board, if necessary. This Court has neither the information nor the authority to supervise their conduct, ordinarily at least, though in a case of palpable oppression an injunction might possibly lie until the people of a town can pass upon the matter in the election of officers. As was said by *Pearson, C. J.,* in *Brodnax v. Groom,* 64 N. C., p. 244, as to the action of county commissioners in matters within their jurisdiction, "This Court is not capable of controlling the exercise of power on the part of the General Assembly, or of the county authorities, and it cannot assume to do so without putting itself in antagonism as well to the General Assembly as to the county authorities and *erecting a despotism of five men;* which is opposed to the fundamental principle of our government and usages of all times past. For the exercise of powers conferred by the Constitution the people must rely upon the honesty of the members of the General Assembly and of the persons elected to fill places of trust in the several counties. This Court has no power, and is not capable, if it had the power, of controlling the exercise of the power conferred by the Constitution upon the legislative department of the Government or upon the county authorities."

The above has been cited and approved in very numerous cases (see citations in Anno. Ed.).

It may be noted that since this ordinance was adopted, 13 May, 1912, there has been an election of a new governing board for the said town, and the ordinance must have been approved by the people of the town and the new officials, as it has not been repealed.

The decisions are thus summed up: "The prevention of and protection against conflagration is generally recognized as an appropriate exercise of the *police power* by municipalities and the enactment of ordinances establishing fire limits and forbidding the use of inflammable material in building or in the erection thereof within such limits, has been uniformly sustained as appropriate methods of its exercise. While some courts hold that this power is inherent in a municipality, it nevertheless usually exists only by reason of an express grant or a necessarily implied statutory or constitutional delegation." 28 Cyc., 741.

Even in the absence of statutory authority, it has been held that the town authorities have the power to prohibit the repairing or altering of wooden buildings within prescribed limits. *Ex Parte Fiske,* 92 Cal., 125; *King v. Davenport,* 98 Ill., 305; *S. v. O'Neal,* 49 La. Annual, 1171; *Brady v. Insurance Co.,* 11 Mich., 425. In *Bank v. Sarlls,* 129 Ind., 201, it was held that the power to prohibit the repair of a building did not exist unless granted by the general law or by the charter of a town. This last is the case here.

In our own State, in *S. v. Tenant,* 110 N. C., 609, the ordinance was held invalid solely because it left the matter of such building to the arbitrary discretion of the board of aldermen, and did not, as in this case, prescribe a uniform rule of action governing the exercise of the discretion.

In this instance, the town, under the express provisions of the charter, has power to pass the ordinance prohibiting the erecting or repairing of a wooden building, and in *S. v. Johnson,* 114 N. C., 846, an ordinance such as the one now under consideration was sustained against the defendant, who was prosecuted for making repairs to a house that had been partially destroyed by fire.

In *Durham v. Cotton Mills,* 141 N. C., at p. 635, *Walker, J.,* says in speaking of a somewhat similar act to protect the waters of creeks, etc., from pollution: "The design of the act is not to take property for public use, nor does it do so within the meaning of the Constitution. It is intended to restrain and regulate the use of private property so as to protect the common right

of all the citizens of the State. Such acts are plainly within the *police power* of the Legislature, which power is the mere application to the whole community of the maxim, *'Sic utere tuo, ut alienum non lædas';* nor does such restraint, although it may interfere with the profitable use of the property by its owner, make it an appropriation to a public use so as to entitle him to compensation." After citing various authorities, it is further said: "Many instances of such an exercise of this power can be found. The State regulates the use of property in intoxicating liquors by restraining their sale, not on the ground that each particular sale does injury, for then the sale would be prohibited, but for the reason that their unrestricted sale tends to injure the public morals and comfort. The State is not bound to wait until contagion is communicated from a hospital established in the heart of a city; it may prohibit the establishment of such a hospital there, because it is likely to spread contagion. So the keeping of dangerous explosives and inflammable substances and the erection of buildings of combustible materials within the limits of a dense population may be prohibited because of the probability or possibility of public injury. Such instances might be indefinitely multiplied, but these are sufficient to illustrate this case. The object of this legislation is to protect the public comfort and health. For that purpose the Legislature may restrain any use of private property which tends to the injury of those public interests."

It is urged that the placing of a metal roof upon this wooden ell makes it not more dangerous, but less so. But this loses sight of the object of the ordinance, which is not only to prohibit the building of wooden buildings within the prescribed limits, but while not requiring the pulling down of the wooden buildings now within the limits, prohibits their repair, in order to prevent their indefinite continuance therein, as would be the case if they can be repaired from time to time. As was said in *S. v. Johnson, supra,* this does not prohibit slight repairs, such as putting in broken windows or hanging a shutter, or fixing up the steps. But it does prohibit such repairs as in this case, of putting on a new roof, which makes the building

habitable and thereby insures its continuance. This is contrary to the spirit and the letter of the ordinance, and defeats its purpose, which is to permit only brick, concrete, or stone buildings to be erected and contemplates the discontinuance of wooden buildings as fast as they become by decay unfit for further use or habitation. The substantial repair of such buildings is therefore forbidden.

In *S. v. Baskerville,* 141 N. C., 818, *Hoke, J.,* says: "It is well established that an act of the Legislature will never be declared unconstitutional unless it plainly and clearly appears that the General Assembly has exceeded its powers." In *Ogden v. Saunders,* 12 Wheaton, 213; Cooley Const. Lim. (7 Ed.), 253, the Supreme Court of the United States held that "No act should be held unconstitutional unless it is clearly so, *beyond a reasonable doubt."*

The action of the Legislature authorizing the enactment of this ordinance and of the board of aldermen in passing it is not a taking of private property for public uses, but it is the restriction of the defendant in the unlimited use of his property by virtue of the *police power* (Dillon Mun. Corp., 301, 727), for the purpose of protecting the community from the dangers to which the public would be exposed by the continuance of a wooden building in that locality, by the requirement that when it becomes unusable by decay it shall be replaced by a safer construction than wood.

Upon the special verdict the court should have directed that the jury return a verdict of guilty.

Reversed.