[File No. 7330]

KENNETH SODERFELT, Appellant, v. THE CITY OF DRAYTON, a Municipal Corporation, Arthur N. Fleckten, as Mayor of said City, and Donald T. Dryden, Edwin Raney, Donald Halcrow and Dean Brousseau, as Members with said Mayor of the City Council of said City of Drayton, Respondents.

(59 NW2d 502)

Opinion filed June 20, 1953.   Rehearing denied July 22, 1953.

*Day, Stokes, Vaaler & Gillig,* for appellant.

*Harold D. Shaft* and *R. H. McEnroe,* for respondents.

Sathre, J.   The plaintiff in this action, Kenneth Soderfelt, is a resident of the City of Drayton, North Dakota and is the owner of the north 25 feet of Lot 24 on the west side of Main street original townsite of Drayton, North Dakota upon which is located a certain frame building erected some time prior to 1903.

The defendants are the city of Drayton, a municipal corporation, Arthur N. Fleckten, as mayor of said city and Donald T. Dryden, Edwin Raney, D. M. Halcrow and Dean Brousseau, as members with said mayor of the city council of said city of Drayton.   In 1946 the city council of the city of Drayton, enacted ordinance 114 providing for the demolition, repair or removal of any building or structure which is or threatens to be, a fire hazard or which is or threatens to be dangerous to the safety of the occupants or persons frequenting such premises, or which is in a dilapidated condition, and providing for written notice of hearing to the owner and for appeal from any final order of the city council and providing a penalty for violation thereof.

The ordinance defines as substandard buildings or structures, buildings that are in such state of disrepair as to be a menace' to the health, morals and safety and general welfare of those living within the city.   Under the powers granted by the ordi-

nance to the city council it may require the owners and others interested in the property which is found to be substandard to repair such property if the same is reparable, and if not, to destroy the same after due notice given and hearing had before the city council. If after such notice and hearing the owner is dissatisfied with the findings and order of the city council he may appeal to the district court within forty days after such findings and decision.

The provisions of the ordinance pertinent to the issues in the case at bar are as follows:

"Section 1. All buildings or structures which have any or all of the following defects shall be deemed sub-standard buildings or structures:

(a) those whose interior walls or other vertical structural members list, lean or buckle to such an extent that a plumb line passing through the center of gravity falls outside of the middle third of its base.

(b) those buildings which, exclusive of the foundation, show 33% or more of damage or deterioration of the supporting members or member, or 50% of damage or deterioration of the non-supporting enclosing or outside walls or covering.

(d) those which have been damaged by fire, wind or other causes so as to have become dangerous to life, safety, morals, or the general health and welfare of the occupants or the people of this city.

(e) those which have become or are so dilapidated, decayed, unsafe, insanitary or which so utterly fail to provide the amenities essential to decent living that they are unfit for human habitation, or are likely to cause sickness or disease, so as to work injury to the health, morals, safety, or general welfare of those living therein.

(h) those that have parts thereof which are so attached that they may fail and injure members of the public or property.

(i) those which because of their condition are unsafe, unsanitary, or dangerous to the health, morals, safety or general welfare of the people of this city.

Section 2. All sub-standard buildings or structures within the terms of Section 1 of this ordinance are hereby declared to be

public nuisances, and shall be repaired, removed, or demolished as hereinbefore and hereinafter provided.

The ordinance provides for election by the city council of one of its members as building commissioner and provides also for the appointment of a building inspector. It is the duty of the building inspector among other things to inspect any public building, wall or structure about which complaints are filed by any person that a building, wall or structure is or may be existing in violation of the ordinance; to notify in writing the owner, occupant, lessee, mortgagee or agent, and all other persons having an interest in said building as shown by the records in the office of the Register of Deeds of Pembina county. The notice must require the owner to remove, repair or demolish said building or structure in accordance with the terms of the notice and the ordinance. He must further report to the building commissioner any non-compliance with such notice and appear at all hearings conducted by the building commissioner of the city council and report the condition of sub-standard buildings or structures which he has inspected or examined.

In March 1903 the city commission of Drayton enacted what is known as fire ordinance No. 39. This ordinance specifies the class of buildings which may be erected within the fire limits, the material for such buildings, and other requirements.

On June 11th, 1949, the building inspector of the city of Drayton served upon the plaintiff, Kenneth Soderfelt the following notice:

"You are hereby notified that the undersigned building inspector of the City of Drayton, North Dakota acting pursuant to Ordinance 114 and upon the direction of the City Council of said city has made an inspection of the following described building in which you are, or appear to be, interested in, to-wit:

A frame store building situated upon the South 22 feet of the Northerly 25 feet of Lot 34, on the West side of Main Street in the original Townsite of the City of Drayton.

"You are further notified that the undersigned building inspector deems the foregoing described building to be substandard within the meaning of Section 1 of Ordinance 114 in the following particulars:

748

1. Interior walls and vertical structural members list, lean or buckle to such an extent that a plumb line passing through the center of gravity falls outside of the middle third of its base.

2. Supporting members show more than 33% deterioration and enclosing walls show in excess of 50% deterioration.

3. Building in such a dilapidated, decayed, unsafe, insanitary condition that it is unfit for human habitation.

4. That parts of said building are so attached that they may fall and injure members of the public or property.

5. That said building, because of its condition is unsafe, insanitary and dangerous to the health, morals, safety and general welfare of the people of the City of Drayton.

6. That said building is more than 50% damaged, decayed and deteriorated from its original value and structure.

You are therefore ordered to move or demolish the said building before July 20, 1949.

Dated June 11, 1949."

This notice was served upon the plaintiff in the manner and form provided by the ordinance. On July 25, 1949 the building inspector wrote to D. M. Halcrow the city building commissioner that the plaintiff Kenneth Soderfelt had failed to comply with the notice of June 11, 1949, and on September 7, 1949, D. M. Halcrow the building commissioner of the city of Drayton served the following notice upon the plaintiff Kenneth Soderfelt:

"To: Kenneth Soderfelt, Drayton, N. D.
and Alvin Thompson, Argyle, Minn.

The undersigned Building Commissioner of the City of Drayton, North Dakota is in receipt of a report from John P. R. Holler, Building Inspector of said city stating that there has been no compliance with the Notice and Order of said Building Inspector of date June 11, 1949.

You are therefore ordered to show cause, if any you have, before the Building Commissioner of the City of Drayton, at the City Hall of said City of Drayton, on Thursday, September 15, 1949, at 10:00 o'clock A.M. why the frame store building situated upon the South 22 feet of the Northerly 25 feet of Lot 34, on the West Side of Main Street, in the Original Townsite of the City

of Drayton should not be removed or demolished in accordance with the statement of particulars set forth in the aforementioned Building Inspector's notice dated June 11, 1949.

Dated September 7, 1949."

Said notice was served and posted in the manner and form provided by the ordinance. At the hearing on September 15, 1949, the plaintiff Kenneth Soderfelt filed a written "showing of cause" in which he set forth his reasons why the building should not be demolished and that it was in such condition that it could be repaired and placed in a safe condition. In substance he proposed to do the following:

Put in complete concrete foundation along the south side, rear and front with suitable concrete base to join sidewalk. Complete concrete floor after filling in old basement remains and providing gravel mat according to standard construction. Repair and rebuilt front as already indicated to city council, with concrete cement blocks and glass-brick according to basis of drawing already submitted with stucco or other covering of front above first story. A general overhauling of the exterior of the building to a neat and well kept appearance and a covering of the same with fire resistant or fire proof material; that the cost of the materials necessary for such repairs would be from $500.00 to $700.00 or not to exceed $1000.00, and that he had experience in carpenter work and would do the work himself.

The plaintiff also submitted a statement in the form of an affidavit by Charles E. Adamson a contractor of Grafton, N. D. who claimed to have more than 20 years experience as a contractor and builder. He stated that the building under consideration was reparable and that its condition was such that from a practical and business point of view it was feasible to repair and reconstruct it. He went somewhat into detail as to what was required to be done to put the building in standard condition and stated that the value of the material in the building in its present condition would be from $2000.00 to $2500.00, and that such building was of a class that would normally be repaired by owners rather than dismantled.

Two contractors and builders Stanley Ramon and Thomas

Jordan presented sworn statements in behalf of the city of Drayton. Stanley Ramon stated that he had made an inspection of the building in question and he found that in his estimation it had deteriorated more than 75%. He further made a detailed statement of the material necessary to repair the building or place it in good repair and that the cost of material for same would be $6760.95. Thomas Jordan the other contractor went into detail and stated that the floor joists had deteriorated 50%, foundation and sills had deteriorated 100%, walls had deteriorated 75%, interior studdings 35%, window deterioration 100%, roof 25%, exterior sheeting 100% and electric wiring 100%, chimney 100% and that the north wall was impossible of proper repair because of the proximity to an adjoining building and would have to be completely replaced. His conclusion was that the building considered in its entirety had depreciated 70%. That the cost of fully repairing the building would almost reach the cost of building a similar structure new. The building commissioner, after reviewing the testimony given at the hearing, made his findings of fact to the effect that the building was more than 50% damaged, decayed and deteriorated from its original value and structure and was beyond repair.

Thereafter and on October 3, 1949, the building commissioner D. M. Halcrow issued an order directed to the plaintiff Kenneth Soderfelt reciting that same was based upon all of the testimony and evidence heard before the commissioner and that the same was issued with the approval of and pursuant to the direction of the city council upon all of the files and proceedings in said matter and it provided as follows:

"It is ordered that that certain frame building situated upon the south 22 feet of the north 25 feet of lot 34 on the west side of Main street in the original townsite of the city of Drayton, North Dakota, be removed or demolished within 30 days of the date of the service of this order upon you exclusive of the day of service."

This order was served upon the plaintiff Kenneth Soderfelt and posted in the manner and form as provided for in Ordinance 114.

The issuance of the foregoing order and service thereof upon the plaintiff Kenneth Soderfelt was approved by the city council of the city of Drayton on the 3rd day of October, 1949 at a regular meeting of said council.

The plaintiff brought an action for an injunction to restrain and enjoin the defendants, their servants and agents forever from in any way entering or interfering with his freedom to repair the property involved, and that the proceedings had by the defendants under said ordinance be declared void and of no effect and further declaring the purported ordinance or portions thereof under and by means of which the defendants claimed to have authority be declared void and of no effect.

The defendants answered admitting that the plaintiff was the owner of the property involved and that action had been taken ordering the demolition of the building, but denied every other allegation and by way of cross complaint demanded that plaintiff's action be in all things dismissed and that he be restrained and forever enjoined from repairing or rebuilding or attempting to repair or rebuild the building described in the complaint and demanding a mandatory injunction requiring the plaintiff to remove or demolish said building within a time to be fixed by the court and providing that if the plaintiff failed to comply with such order within said time that the sheriff of Pembina county be directed to do so.

The case was tried before the Honorable Harold P. Thomson, Judge of the District Court of Pembina County, at Grafton, North Dakota on the 27th day of October 1949, and judgment was rendered in favor of the defendants for a dismissal of plaintiff's cause of action and that he be restrained and enjoined from repairing or rebuilding or attempting to repair or rebuild the building described in the complaint, and requiring the plaintiff on or before September 15th, 1950 to remove or demolish the building described in the complaint.

The plaintiff appealed from the judgment and demanded a trial de novo.

Numerous specifications of error are assigned but they may be considered under two heads namely: First, that the ordinance under which the defendants were acting in the proceed-

ings taken is unreasonable, unconstitutional and void in so far as the same permits or authorizes defendants to interfere with plaintiff's repair of his property. Second, even if the ordinance is valid, the action of the city council thereunder was arbitrary, unfair, unreasonable and so discriminatory as to be in excess of the authority granted by such ordinance.

We shall discuss these propositions in the order stated. Chapter 252, Session Laws of 1945 being Sec. 40-0502, 1949 Supp. NDRC 1943, grants to cities definite powers to provide by ordinance regulations relative to the construction, maintenance, repair and demolition of buildings within their limits for the purpose of protecting the safety, health, morals and general welfare of the public, and reads as follows:

"The governing body of any city shall have the authority to provide by ordinance for the demolition, repair or removal of any building or structure located within the limits of such city or other territory under its jurisdiction, which creates a fire hazard, is dangerous to the safety of the occupants or persons frequenting such premises, or is permitted by the owner to remain in a dilapidated condition. Any such ordinance shall provide for written notice to the owner of a hearing by the governing body before final action is taken by such body. It shall also provide a reasonable time within which an appeal may be taken by the owner from any final order entered by such governing body to a court of competent jurisdiction. This Act (subsection) shall in no way limit or restrict any authority which is now or may hereafter be vested in the state fire marshal for the regulation or control of such buildings or structures."

The appellant has taken no exception to the procedure of the council in enacting the ordinance involved here; it is presumed therefore that the council complied with all of the statutory requirements in the enactment of such ordinance. Statutory enactments and municipal ordinances having for their purpose the protection of the public health, safety, morals and public welfare are founded upon the police power inherent in the state. In passing upon the constitutionality of such statutes or ordinances the courts will not declare them unconstitutional and thus substitute their judgment for that of the legislative body charged

with the primary duty and responsibility of determining the question where the question is fairly debatable, that is, unless the statute or ordinances are clearly arbitrary and unreasonable having no substantial relation to the public health, safety, morals or public welfare. State ex rel. Seattle Title Trust Company v. Roberge, 144 Washington 74, 256 Pac. 781; Radice v. New York, 264 US 292, 44 Sup Ct 325, 68 L ed 690.

In the case of City of Bismarck v. Hughes, 53 ND 838, 208 NW 711, the question before the court was as to the reasonableness of a zoning ordinance. The defendant Hughes contended that the State Enabling Act which authorized the enactment of the ordinance and also the ordinance were unconstitutional in that they would take private property for public use without compensation; that they violated the 14th Amendment to the Constitution of the United States by depriving the owner of property without due process of law. In the course of the opinion the court said:

"Each ordinance must stand or fall on its merits, but every presumption is in favor of its validity, and the question to determine is not, does the ordinance meet with the approval of the court, but, can the courts say that it is an unreasonable, arbitrary exercise of power?"

While the ordinance involved in the instant case is not a zoning ordinance, nevertheless we think that the rule of construction announced in the case of City of Bismarck v. Hughes supra applies equally to the ordinance under consideration here since it relates to the public health, safety and welfare.

In the case of State v. Lawing, 164 NC 492, 80 SE 69, 51 LRA NS 62, the validity of certain fire ordinances was before the Supreme Court of North Carolina. In that case the court held that a town ordinance forbidding the erection of a building within the fire limits unless the outer walls were brick, stone or concrete, and providing that no person shall repair, add to, change or improve any existing building not so constructed, was violated by placing a metal roof on a wooden building, even though this made the building less dangerous since, while the ordinance did not prohibit slight repairs, it not only prohibited building of

wooden buildings, but also substantial repairs making the building habitable, and thereby insuring its continuance.

In the case of Russell v. City of Fargo, 28 ND 300, 148 NW 610, the plaintiff brought action to obtain a decree adjudging the building ordinance of the City of Fargo, known as Chapter 13 of the Consolidated Ordinances as amended, null and void. The particular feature of the ordinance which was challenged provided that

"It shall be unlawful to repair any frame building within the fire limits of the city, when such building shall have been damaged by the elements or decay to the extent of 50% of such building exclusive of the foundation thereof."

This court held that the ordinance in question was valid. We quote from the opinion:

"The constitutionality of this 50 per cent test ordinance is questioned, but we are satisfied that, for the purpose for which it was intended, it is a valid enactment. The authorities indicate that there must be some method of determining whether changes made in an old structure are sufficient to constitute a rebuilding or the erection of a new structure, and such provisions are based on the supposition that there is a point somewhere between a perfect or safe building and one which cannot be made safe as to fire, etc., without complete demolition, and a rebuilding. Both the legislature and the city council have fixed that point at 50 per cent deterioration above the foundation, evidently taking the view that, where it has deteriorated more than half in value, that is, has so deteriorated that, on a reconstruction, the building will be more new than old, it is the erection of a new building, rather than the repairing of an old one (First National Bank v. Sarls, supra), but an arbitrary prohibition is invalid. We cannot pronounce this an unreasonable test."

With reference to fire ordinances—Subdivision 34 of Sec. 40-0501 NDRC 1943 provides as follows:

"The governing body of a municipality shall have the power to prescribe fire limits in which wooden buildings shall not be erected, placed, or repaired without permission; to provide that when a building within such limits has been damaged by fire,

decay or otherwise to the extent of fifty percent of its valuation, it shall be torn down and removed; to prescribe the manner of ascertaining such damage; to provide for the removal of any structure or building erected contrary to the prescribed rules to declare each days continuance of such building or structure a separate offense and to prescribe the penalties therefor; and to define fireproof material."

Appellant cites the Ohio case of Euclid v. Ambler, 272 US 365, 71 Law Ed 303, 47 Supreme Court Reporter 114, 54 ALR 1016. The village of Euclid had adopted an ordinance establishing a comprehensive zoning plan for regulating and restricting the location of trades, industries, apartment houses, two-family houses, single-family houses, etc; the lot area to be built upon, the size and height of the building etc. The defendant challenged the validity of the ordinance on the grounds that it was in derogation of the 14th amendment to the Federal Constitution in that it deprived it of liberty and property without due process of law, denied it equal protection of the law and that it offended against certain provisions of the constitution of the State of Ohio. The prayer of the bill was for an injunction restraining the enforcement of the ordinance and all attempts to impose or maintain as to the defendant's property any of the restrictions, limitations or conditions of said ordinance. The Federal District Court held the ordinance to be unconstitutional and void and enjoined its enforcement. An appeal was taken to the Supreme Court of the United States. In an exhaustive opinion written by Justice Sutherland the constitutionality and validity of the statute was sustained in its general scope. We quote the following from the opinion:

"The relief sought here is of the same character, namely, an injunction against the enforcement of any of the restrictions, limitations or conditions of the ordinance. And the gravamen of the complaint is that a portion of the land of the appellee cannot be sold for certain enumerated uses because of the general and broad restraints of the ordinance. What would be the effect of a restraint imposed by one or more of the innumerable provisions of the ordinance, considered apart, upon the value or marketability of the lands is neither disclosed by the bill nor by

the evidence, and we are afforded no basis, apart from mere speculation, upon which to rest a conclusion that it or they would have any appreciable effect upon these matters. Under these circumstances, therefore, it is enough for us to determine, as we do, that the ordinance in its general scope and dominant features, so far as its provisions are here involved, is a valid exercise of authority, leaving other provisions to be dealt with as cases arise directly involving them."

It is true that some of the ordinances considered in the cases cited herein were fire ordinances rather than building ordinances; but whether it be a fire ordinance or a building ordinance that is being considered, it is enacted under the police power of the state and its political subdivisions for the protection of life, safety, morals, general health and general welfare of the public. The purpose of the enactment of ordinances in both classifications is therefore the same and it would follow that the same rule of construction and interpretation would apply to both. The provisions of the ordinance challenged are stated in clear and concise language and the enactment thereof by the city council was a valid exercise of the police power.

We shall next consider the proposition whether the proceedings of the city council of the city of Drayton were so arbitrary, unfair and unreasonable as to be illegal and void, and in excess of the authority granted by the ordinance.

Plaintiff's building is old. It was constructed prior to 1903 and had not been occupied for several years.

The evidence presented at the hearing before the city council, including several photographs of the building admitted as exhibits, established that the foundation had disintegrated, the walls were warped and cracked, and the lower ends of the upright studdings were rotten and would have to be replaced. The building was out of plumb, and leaned or listed considerably more than permitted by the ordinance. All of this is shown by the sworn statements of the contractors, Thomas Jordan and Stanley Ramon presented at the hearing before the city council. the substance of which we have set out herein.

All of the parties admit the substandard condition of the building. The plaintiff and his witnesses, however, contend that the

building is reparable, while the defendants and their witnesses contend that it is beyond repair.

The written statement presented by appellant at the hearing before the city council as to the repairs he proposed to make, and the affidavits of the three contractors, Jordan, Ramon and Adamson, were by stipulation admitted in evidence at the trial in district court. The plaintiff testified in his own behalf. All of the members of the city council were called by plaintiff for cross examination under the statute. Their testimony was to the effect that plaintiff's building had deteriorated to such an extent as to be beyond repair.

I. Steenson, former mayor and former city attorney of the city of Drayton testified in behalf of the plaintiff to the effect that appellant's building in its present condition, that is without any repairs, would probably be of the value of $2000.00. He testified also that if it were repaired and put in the condition proposed by the plaintiff Mr. Soderfelt the rental value would be $75.00 per month. He testified further that in his opinion the building in its present condition was not a menace to public health and safety but on cross examination admitted that there were no other buildings in town in the condition of disrepair as was the appellant's building.

Mr. Soderfelt the appellant testified in his own behalf substantially in accordance with his statements made at the hearing before the city council. He testified further that if the building would be removed and demolished it would be a loss to him of $2000.00 to $2500.00.

From the testimony taken before the city council as well as the testimony taken in the district court there is no doubt that the building of the defendant was substandard and that it was more than 50% deteriorated in all respects.

The question is thus presented whether the evidence at the hearing before the city council was sufficient to warrant the city council in concluding that the building had deteriorated to such a degree that it was beyond repair, or whether the city council abused its discretion in ordering its removal and demolition.

The general rule is that the courts will not substitute their judgment for that of the governing body of a municipality in

the matter of enforcement of ordinances unless it is clearly shown that it is abused its discretion.

28 Am Jur 352, Injunctions, Sec. 162, states:

"Where a public officer essays to exercise the jurisdiction conferred upon him, his errors, although subject to subsequent correction, cannot be enjoined as an arbitrary exercise of his authority. Particularly will courts hesitate to interfere by injunction where the acts complained of are essential to the health and comfort of the people at large. In fact, it may be stated as an established rule that injunction will issue against public officers only to prevent a breach of trust affecting public franchises, or some illegal act under color or claim of right injurious to the property or other rights of individuals or the public, or where serious injury will result to private individuals without corresponding public benefit. A mandatory injunction may be an appropriate remedy to compel affirmative acts by public corporations and officers where the urgency for such relief is great and the legal remedy inadequate, but it will not issue to control the exercise of discretionary acts."

Also 28 Am Jur 373, Injunctions, Sec. 185; states:

"Injunctions against the enforcement of municipal ordinances, passed by the corporation in the exercise of its delegated power, are governed by much the same rules as those which apply in the case of statutes. Certainly, where the ordinance or resolution is valid, equity will not interpose to prevent its enforcement, unless, perhaps, it is in an illegal and wrongful manner, causing irreparable injury to the property or civil rights of the complaining party. There are statutory provisions in some states that no injunction shall issue to restrain the enforcement of a penal ordinance, which have been construed to mean that no writ of injunction shall issue to restrain the judicial enforcement of such ordinance. Ordinarily, too, the injunctive aid of a court of equity may not be invoked to prevent the enforcement of a valid and reasonable police regulation which has been passed pursuant to authority conferred by ordinance. Courts do not look with favor on proceedings to restrain the enforcement of municipal ordinances having for their object the preservation of the health or good order of society and the elevation of its

moral tone, and they require that a clear case be made out before this extraordinary relief will be granted. Therefore, if it should happen that acts prohibited in an ordinance are a public nuisance, the court will not perpetuate their continuance by granting an injunction against the enforcement of the ordinance, regardless of its validity. Nor will a court of equity concern itself with the question whether the city authorities have selected the best means within the proper exercise of their power, to accomplish a purpose."

The appellant in the case at bar contends that the defendants violated subdivision (a) of Sec. 3 of the ordinance in question. This subdivision provides:

"If the substandard building or structure can reasonably be repaired so that it will no longer exist in violation of the terms of this ordinance it shall be ordered repaired."

However subsection (c) of Sec. 3 provides:

"In any case where a substandard building or structure is 50% damaged or decayed, or deteriorated from its original value or structure, it shall be demolished and in all cases where a building cannot be repaired so that it will no longer exist in violation of the terms of this ordinance it shall be demolished."

As pointed out the city council made findings that the building in question was more than 50% deteriorated. In refusing to order such building to be repaired the city council acted in conformity with subdivision (c) of Section 3, quoted above which provides that if the building is found to be 50% deteriorated from its original value or structure it shall be demolished. While the appellant offered to make certain repairs to the building as referred to herein, and proposed to do the repair work himself the city council evidently was of the opinion that the materials which the appellant proposed to furnish would be wholly inadequate to restore the building to a state of repair which would comply with the requirements of ordinance 114.

The evidence presented before the city council was conflicting and was such that there could be an honest difference of opinion as to whether the building in question had deteriorated to such a degree that it could not be repaired so as to comply with ordinance 114 and fire ordinance 39. We cannot say under the evi-

dence and the record that the action of the city council in ordering the removal and demolition of appellant's building was arbitrary, discriminatory and such an abuse of discretion as to warrant equitable relief of injunction.

In his reply brief the appellant argues for the first time that the provision in ordinance 114 requiring the owner of a building to file a bond in the sum of $500.00 on appeal from an order of the city council renders the ordinance invalid. However, there is no allegation in the complaint challenging the ordinance on that ground, nor is there any specification in the assignments of error that the ordinance is invalid because of the requirement of a bond on appeal. The only allegation in the complaint as to the invalidity of the ordinance is as follows:

"the purported ordinances under and by virtue of which it is pretended that the defendants are acting in the proceedings taken in this matter are unreasonable, unconstitutional, and void insofar as the same purportedly permit or authorizes the defendants to interfere with plaintiffs repair on his property and the defendants are adopting unreasonable, unfair, discriminatory and capricious construction of the terms of said purported ordinances, all to the injury and loss passed, present and perspective of this plaintiff."

It will be noted that the ordinance is challenged only on the ground that it permits the defendant to interfere with appellant's right to repair his building.

The general rule is that one who relies on the invalidity of an ordinance must allege facts to establish such invalidity. 62 CJS Municipal Corporations, page 388, Sec. 207 states the rules as follows:

"Since an ordinance which is not void on its face is presumed to be valid, one who relies on the invalidity of such an ordinance must plead this fact at the first opportune moment, and must allege facts showing it to be invalid and wherein it is invalid, and a general allegation that it is illegal and void is insufficient. So, where a municipal ordinance or regulation may be unreasonable by reason of particular facts or circumstances, one challenging the validity of such ordinance or regulation must give the particular facts rendering it unreasonable, and they must be suf-

ficiently pleaded to enable the opposite party to meet the objection. . . . Invalidity on one ground is not properly presented for consideration by a pleading challenging the validity on another ground."

In the case of Benson. v. City of Andalusia, 195 So 443, 240 Ala 99, it was held that:

. "one claiming that an ordinance is unreasonable, arbitrary or discriminatory, has the burden of alleging and proving facts to support the claim."

In the case of Village of Grand View v. McElroy et al. 318 Mo 135, 298 SW 760, the Supreme Court of Missouri said:

"Not only was the alleged constitutional question not properly raised, but it was not timely raised. It must be raised at the earliest possible moment, or it will be deemed to be waived. It must be raised in the pleadings, if due to be raised there. State v. Hale (Mo. Sup) 248 SW 958; Miller v. Connor, 250 Mo 677, loc cit 684, 157 SW 81; Lohmeyer v. Cordage Co. 214 Mo 685, loc cit 690, 113 SW 1108."

The issue raised by the appellant is not within the pleadings and was not before the trial court. It was raised for the first time before this court, and therefore cannot be considered here.

The judgment of the district court is affirmed.

Morris, C. J., and Christianson, Burke and Grimson, JJ., concur.

Per Curiam. (On petition for rehearing.) The appellant has petitioned for rehearing upon several grounds. All of them have been fully discussed and disposed of in the original opinion, with one possible exception to which we will devote some consideration. The appellant points out that the building involved in this action was legally constructed prior to the enactment of the statute, Section 40–0502 NDRC 1949 Supp. (Chapter 252 SLND 1945), and prior to the enactment of the ordinance under which the city acted. It is then argued that the appellant has at all times been willing to repair the building and follow the requests of the city with respect thereto and that the action

of the city in ordering the building destroyed is a violation of the appellant's constitutional and vested property rights.

In the case of Russell v. City of Fargo, 28 ND 300, 148 NW 610, in considering an analogous statute providing for the enactment of ordinances designating fire limits of cities, this court said:

"When the law gives city officials the power to remove a building erected within the fire limits in violation of the statute or ordinance, the power to compel the removal of the building grows solely from the fact that its erection was in violation of the ordinance, and not because it is a nuisance; and the power to abate nuisances does not warrant destruction of valuable property, which was lawfully erected, or anything which was erected by lawful authority; and the power to do so, when given by the legislature, is held to be inoperative and void, *unless the thing is in fact a nuisance,* or was created or erected after the passage of the ordinance, and in defiance of it. This is the distinction between the rights of the city regarding buildings erected before the fire limits were established and those subsequently built." (Italics supplied.)

The statute, Section 40–0502 NDRC 1949 Supp., authorizes the governing body of a city, among other things, to provide by ordinance for the demolition of any building "which creates a fire hazard, is dangerous to the safety of the occupants or persons frequenting such premises, or is permitted by the owner to remain in a dilapidated condition." This statute we have held in the main opinion to be constitutional and Ordinance No. 114 of the City of Drayton to have been enacted in accordance therewith. Section 3 (c) of this ordinance, in part, provides:

"In any case where a 'sub-standard building or structure' is 50 percent damaged or decayed, or deteriorated from its original value or structure, it shall be demolished, and in all cases where a building cannot be repaired so that it will no longer exist in violation of the terms of this ordinance it shall be demolished."

A similar fifty per cent provision was held to be constitutional in Russell v. City of Fargo, supra.

In Behrend v. Town of Pe Ell, 136 Wash 364, 240 Pac 12, it is said:

"In the ordinance under consideration, the standard is set at fifty per cent of the value of the building. It seems to be argued that this leaves the discretionary power with the council, but we think no discretion is granted by the ordinance. All persons are treated alike under its provisions. The standard having been fixed at fifty per cent of the value of the building, all persons applying for permits are entitled to them as a matter of right if the repairs do not exceed fifty per cent of the value of the building. The council has no discretion but must grant the permit if the value of the repairs is less than fifty per cent; and if more than fifty per cent, must refuse. This ordinance sets a standard, operates upon all alike, and we think the failure to provide a detailed method of procedure cannot render it unconstitutional."

In that case a permit to repair was refused and the refusal upheld by the court.

In this case the building in question, although built before the enactment of state or city legislation authorizing its destruction, nevertheless has been permitted by its owner to reach such a state of dilapidation that the city was well within its authority in determining that it should be demolished because it had deteriorated to a degree that placed it in the category termed "nuisances" by Section 2 of the ordinance, which provides:

"All 'sub-standard buildings or structures' within the terms of Section 1 of this ordinance are hereby declared to be public nuisances and shall be repaired, removed or demolished as hereinbefore and hereinafter provided."

We reach the conclusion that the record shows that appellant's building was, under the ordinance and in fact, a nuisance which the city might properly abate by ordering its demolition. The fact that the building, when built, was not a nuisance and was not unlawful does not prevent its destruction as a building that has become a nuisance under the ordinance and its maintenance unlawful. The city council having, after a full and fair hearing, determined that the building in question was substandard under the fifty per cent rule provided by the ordinance, the council of the City of Drayton, like that of the Town of Pe Ell, had no discretion but to order the removal or demolition. This order

being lawful, the district court properly declined to interfere.
Rehearing denied.

MORRIS, C. J., and SATHRE, CHRISTIANSON, BURKE and GRIMSON, JJ., concur.